IN RE the TERMINATION OF PARENTAL RIGHTS TO
DESMOND F., a person under the age of 18:

BROWN COUNTY DEPARTMENT OF HUMAN SERVICES,
Petitioner-Respondent,

v.

BRENDA B., Respondent-Appellant-Petitioner,

BRIAN K., Respondent.

Supreme Court

*No. 2010AP321. Oral argument December 1, 2010.
—Decided February 4, 2011.*

2011 WI 6

(Also reported in 795 N.W.2d 730.)

313

For the respondent-appellant-petitioner there were briefs and oral argument by *Leonard D. Kachinsky, Sisson & Kachinsky Law Office*, Appleton.

For the petitioner-respondent there was a brief and oral argument by *Robert J. Collins, II, Brown County Corporation Counsel*.

¶ 1. ANN WALSH BRADLEY, J. Brenda B. seeks review of an unpublished decision of the court of appeals that affirmed orders of the circuit court termi-

nating Brenda's parental rights to her son, Desmond F.[1] During the first phase of the proceedings, Brenda pled no contest to grounds for involuntary termination, which resulted in a finding of parental unfitness. After conducting a dispositional hearing, the circuit court terminated Brenda's parental rights upon finding that termination was in the best interests of the child. It subsequently denied Brenda's motion to withdraw her no contest plea.

¶ 2. Brenda asserts that she presented a prima facie case that she did not knowingly, voluntarily, and intelligently enter the no contest plea. Specifically, she argues that the circuit court failed to inform her that by pleading no contest she was waiving her constitutional right to parent, and it failed to inform her of the full range of possible dispositions the court could enter.

¶ 3. Given that a finding of parental unfitness does not necessarily result in an involuntary termination of parental rights, we determine that the circuit court was not obligated to inform Brenda that by pleading no contest she was waiving her constitutional right to parent. We additionally determine that the court need not explain that the right to parent is a constitutional right. What is important is that the parent understands the import of the rights at stake rather than the sources from which they are derived.

¶ 4. We further conclude that the parent must be informed of the two independent dispositions available to the circuit court. That is, that the court may decide between dismissing the petition and terminating parental rights.

---

[1] *Brown County D.H.S. v. Brenda B.,* No. 2010AP321, unpublished slip op. (Wis. Ct. App., June 2, 2010), affirming orders of the circuit court for Brown County, Timothy A. Hinkfuss, J., presiding.

¶ 5. Finally, we determine that the colloquy in this case fulfilled the requirements set forth above and that Brenda has failed to present a prima facie case that her plea was not entered knowingly, voluntarily, and intelligently. Accordingly, we affirm the court of appeals.

I

¶ 6. In October 2008, Desmond was adjudged to be a child in need of protection or services. He was placed outside the home, in the care of foster parents. Nine months later, the Brown County Department of Human Services (the County) filed a petition for involuntary termination of Brenda's parental rights.[2] As grounds, the County alleged that Desmond was in continuing need of protection or services and also that Brenda failed to assume parental responsibility for Desmond.[3] *See* Wis. Stat. §§ 48.415(2), 48.415(6).[4]

¶ 7. Through her attorney, Brenda opposed the petition, demanded a jury trial for the fact-finding hearing, and waived the statutory time limits. Trial was scheduled for October 6, 2009.

¶ 8. However, at a hearing that took place one day before the scheduled trial, Brenda's attorney advised the court that Brenda intended to plead no contest to the petition's allegation that there were grounds for termination. He explained that Brenda still intended to contest the ultimate disposition:

---

[2] The petition also requested termination of the rights of Brian K., the presumed father, as well as "Any and All Known or Unknown Fathers."

[3] The factual details underlying the petition's allegations are not set forth in this opinion because the merits of the allegations are not at issue in this review.

[4] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

My client and I will talk some more but she [has] indicated to me that she understands the procedure 'cuz I explained it to her. . . .

I explained to her the purpose of a jury trial and the rights that go along with it. We've talked.

. . . .

My client indicates to me that she is going to agree to waive her right to have a jury trial in this case and she [has] made it clear to me that she wishes to contest the ultimate disposition in this case where she would argue to the Court that it's not in the best interests of the child to terminate her parental rights.

She's—she has clearly advised me that she does not want to give up her parental rights and she's made it clear to me after we further discussed this case that she does not wish to have a trial.

The County agreed that if Brenda did not contest that Desmond was in continuing need of protection or services, the County would move to dismiss the remaining alleged ground for termination, failure to assume parental responsibility.

¶ 9. On the following morning, the circuit court placed Brenda under oath and engaged her in a colloquy to determine whether she knowingly, voluntarily, and intelligently intended to plead no contest to grounds for termination. The court's colloquy was lengthy, occupying 20 pages of hearing transcript. Additionally, both Brenda's counsel and counsel for the County addressed Brenda and made extensive inquiries relating to her plea.

¶ 10. The court began by ascertaining Brenda's age, educational level, mental state, satisfaction with her attorney, and ability to read, write, and understand

English. Brenda acknowledged that she had reviewed the petition and its attachment with her attorney, and she stated that she did not have any questions.

¶ 11. Brenda informed the court that she wanted to plead no contest to grounds for termination. The court inquired into whether Brenda understood the procedural rights she was waiving by entering the plea, including the right to call witnesses, the right to cross-examine witnesses, and the right to remain silent without having anyone comment upon her silence. It inquired into whether Brenda understood that she was giving up the right to make the County prove the elements of continuing need of protection or services by clear and convincing evidence.

¶ 12. The court explained that the question at the fact-finding hearing would have been whether there were grounds to terminate her parental rights:

> [W]hat this whole hearing would be about is not whether you're terminate—your parental rights should be terminated. That's ultimately my decision in the disposition hearing. I can either grant the petition to terminate your parental rights or dismiss the petition to terminate your parental rights.
>
> What this is—what this trial would be is [to] see if there are facts to terminate your parental rights on. It's called a fact-finding hearing. Do you understand that?

Brenda responded that she understood. The court outlined the jury instructions and the special verdict questions, and Brenda attested that she understood the findings a jury would have to make.

¶ 13. Upon the court's questioning, Brenda indicated she understood that if the court accepted her plea, the court would be required to make a finding of parental unfitness. The court inquired:

320

> [I]f you make a no contest plea and I accept your plea . . . I have to make a finding of parental unfitness. Do you understand that?

Brenda indicated that she understood.[5]

¶ 14. The court informed Brenda that once grounds for termination were found, the next phase would consist of a dispositional hearing. It explained that at the dispositional hearing, the court could either grant the petition or dismiss the petition, and that decision would be made based on the best interests of the child:

> I can grant the petition at a dispositional hearing or I can dismiss the petition at a dispositional hearing.
>
> Those are the two alternatives and by case law I have to explain to you that those are the alternatives. The standard that I use at the dispositional hearing is different than the standard at a fact-finding hearing. The standard is the best interest of the child.

¶ 15. The court outlined the factors that it would consider at disposition[6] and explained: "I make my

---

[5] The court agreed to delay making the unfitness finding until the beginning of the dispositional hearing "to allow you different alternatives." According to Brenda's attorney's representations, the intention was to allow Brenda time to decide whether she wished to voluntarily consent to the termination of her parental rights. Brenda's attorney explained: "[I]f she decides to voluntarily terminate her parental rights, then there would be no need for a finding of unfitness."

[6] These factors include: the likelihood of the child's adoption after termination; the age and health of the child; whether the child has a substantial relationship with the parent or other family members and whether it would be harmful to the child to sever those relationships; the wishes of the child; the duration of the separation of the parent from the child; and whether the

decisions based on the best interest of the child." Brenda indicated that she understood the factors that would be considered by the court using the best interests of the child standard.

¶ 16. After the court finished its colloquy with Brenda, counsel for the County questioned Brenda. Among other inquiries, he asked whether she understood that by pleading no contest, she was giving up her right to fight the County's allegation that Desmond was in continuing need of protection or services, and that by giving up her right to fight that allegation, she could lose her parental rights to Desmond at the dispositional hearing:

> Q: You understand that by pleading no contest you give up your right to fight the County's allegation that the child is in continuing need of protection or services?
>
> A: Yes.
>
> Q: . . . Do you understand that by giving up your right to fight that allegation you could lose your parental rights to Desmond [] at the dispositional hearing?
>
> A: Yes.

¶ 17. Counsel for the County also inquired about Brenda's understanding of the specific rights she would lose if her parental rights were terminated at the dispositional hearing:

> Q: Do you understand that at the dispositional hearing, if the Court terminates your parental rights, you will lose the right to have visitation with your child?

---

child will enter into a more stable and permanent family relationship as a result of the termination taking into account the condition of the current placement, the likelihood of future placements, and the results of prior placements.

A: Yes.

Q: You will lose the right to know any information about your child including where the child is going to school and information about the child's health?

A: Yes.

Q: Are—that you will lose the right to make any decisions for your child?

A: Yes.

Q: That the child will not have the right to inherit from you?

A: Yes.

Q: That you will not have the right to inherit from your child?

A: Yes.

Q: That you will no longer have the right to custody of the child?

A: Yes.

¶ 18. In response to further questioning by counsel for the County, Brenda acknowledged that she was aware that the County had identified Desmond's current foster mother as a proposed adoptive parent. Likewise, she acknowledged that county employees had discussed various alternatives that might be available for Desmond's custody, including custody with the Department of Human Services, foster home placement, residential care, and institutionalization.

¶ 19. In response to questioning from her own attorney, Brenda professed to understand how termination of parental rights proceedings operate. She acknowledged that she was familiar with the evidence in the case, and she agreed that some of the evidence was positive and some of the evidence was negative.

¶ 20. Before making any findings, the court asked Brenda whether she had any questions, and Brenda responded that she had none. The court then accepted her no contest plea and concluded that it was tendered "freely, voluntarily and intelligently":

> After a discussion with [Brenda] here on the record I asked her a variety of questions, received a variety of responses and [the guardian ad litem] made a statement and [Brown County's counsel] made statements and he asked questions as—as well did [Brenda's counsel].
>
> I am finding that she freely, voluntarily and intelligently tendered a plea of no contest to the petition and the supplement to. I do find that there's a factual basis in the petition; in the supplement thereto for a fact-finding under 48.415(2)(a). So I will accept her no contest plea here today.

The court indicated that Brenda was "very composed," that she "articulated well," and that she "appeared to be very confident of her responses" and "asked appropriate questions." It scheduled the dispositional hearing for the following month.

¶ 21. At the scheduled dispositional hearing, the court initially made the finding of unfitness that had been deferred from the grounds phase of the proceedings. Brenda then testified, as did the proposed adoptive mother and the county social worker who had initiated the petition.

¶ 22. In a memorandum decision issued several days later, the circuit court terminated Brenda's parental rights to Desmond. It explained that the "ultimate decision whether to terminate parental rights is discretionary." After discussing the statutory factors, it concluded that terminating Brenda's parental rights was in Desmond's best interests. It transferred parental rights to the State Department of Children and Families pending adoption.

¶ 23. Brenda filed a notice of appeal. On Brenda's request, the court of appeals remanded the matter to the circuit court for further proceedings so that Brenda could file a motion to withdraw her no contest plea. *Brown County D.H.S. v. Brenda B.*, No. 2010AP321, unpublished slip op. (Wis. Ct. App., Feb. 18, 2010).

¶ 24. On remand in the circuit court, Brenda argued that the colloquy preceding her no contest plea[7] was deficient in two respects. She contended that the circuit court should have inquired into whether she understood that she was waiving her constitutionally protected right to act as a parent by pleading no contest. Brenda also argued that the circuit court was required to ascertain whether she understood all of the potential dispositions available under Wis. Stat. § 48.427.[8] Brenda asserted that she had been unaware of the implications of her no contest plea with respect to these two matters.

---

[7] Throughout the motion, Brenda's counsel asserted that Brenda was seeking to withdraw her "admission." The circuit court construed Brenda's motion as one to withdraw a plea rather than any "admission." The court explained: "You are asking to have her plea withdrawn. I think it's a plea. I note in reviewing the transcript that she did not admit, that she was a no contest, there is a difference[.]"

[8] Wisconsin Stat. § 48.422(3) provides that "[i]f the petition is not contested the court shall hear testimony in support of the allegations in the petition, including testimony as required in sub. (7)." Wisconsin Stat. § 48.422(7)(a) provides that the court must "[a]ddress the parties present and determine that the admission is made voluntarily with understanding of the nature of the acts alleged in the petition and the potential dispositions."

In this case, Brenda did not contest the allegation in the petition that grounds for termination existed. Nevertheless, she did contest the termination of parental rights petition, arguing that the termination would not be in Desmond's best interest.

¶ 25. The court concluded that Brenda had not established any defect in the colloquy. It denied Brenda's motion to withdraw her no contest plea without holding an evidentiary hearing. The court of appeals affirmed in an unpublished opinion. *Brown County D.H.S. v. Brenda B.*, No. 2010AP321, unpublished slip op. (Wis. Ct. App., June 2, 2010).

## II

¶ 26. This case raises the question of whether Brenda has presented a prima facie case that her plea was not entered knowingly, voluntarily, and intelligently. To address Brenda's arguments, we are required to consider the requirements of due process and the interpretation of Wisconsin statutes.

¶ 27. Whether Brenda has presented a prima facie case is a question of law. *Oneida County D.S.S. v. Thérèse S.*, 2008 WI App. 159, ¶ 7, 314 Wis. 2d 493, 762 N.W.2d 122. Likewise, the requirements of due process and the interpretation of statutes present questions of law. *State v. McGuire*, 2010 WI 91, ¶ 26, 328 Wis. 2d 289, 786 N.W.2d 227; *State v. Carter*, 2010 WI 132, ¶ 19, 330 Wis. 2d 1, 794 N.W.2d 213. We review questions of law independently of the determinations rendered by the circuit court and the court of appeals. *State v. Vanmanivong*, 2003 WI 41, ¶ 17, 261 Wis. 2d 202, 661 N.W.2d 76.

## III

¶ 28. To provide context to our discussion, we begin by setting forth the nature of parental rights as well as the procedures under Wisconsin statutes by

which parental rights may be involuntarily terminated. Then, we turn to address Brenda's arguments about the requirements of a plea colloquy. Finally, we apply the requirements we set forth to the colloquy given in this case.

¶ 29. "A parent's desire for and right to the companionship, care, custody, and management of his or her children is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection." *Sheboygan County D.H.H.S. v. Julie A.B.*, 2002 WI 95, ¶ 22, 255 Wis. 2d 170, 648 N.W.2d 402; *see also Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶ 20, 246 Wis. 2d 1, 629 N.W.2d 768. The parent-child relationship is recognized as a fundamental liberty interest protected by the Fourteenth Amendment.[9] *Steven V. v. Kelley H.*, 2004 WI 47, ¶ 22, 271 Wis. 2d 1, 678 N.W.2d 856 (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)).

¶ 30. Nevertheless, Wisconsin's Children's Code, Wis. Stat. ch. 48, provides that "under certain circumstances" a court "may determine that it is in the best interests of the child for the child to be removed from his or her parents, consistent with any applicable law relating to the rights of parents." Wis. Stat.

---

[9] In this case, there is no question that Brenda has a liberty interest in her relationship with Desmond that is protected under the Constitution. We recognize that not all biological parental relationships warrant constitutional protection. *See, e.g., Caban v. Mohammed,* 441 U.S. 380, 392 (1979) ("In those cases where the father never has come forward to participate in the rearing of his child, nothing in the Equal Protection Clause precludes the State from withholding from him the privilege of vetoing the adoption of that child.").

§ 48.01(1)(ag). Termination of parental rights adjudications are "among the most consequential of judicial acts" because they involve the power of the State to "permanently extinguish[]" any legal recognition of the rights and obligations existing between parent and child. *Steven V.,* 271 Wis. 2d 1, ¶ 21. "When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Id.,* ¶ 23 (quoting *Santosky,* 455 U.S. at 753–54).

¶ 31. Initially, the parental right is considered paramount "until there has been an appropriate judicial proceeding demonstrating that the state's power may be exercised to terminate that right." *M.W. v. Monroe County D.H.S.,* 116 Wis. 2d 432, 436–37, 342 N.W.2d 410 (1984). A court may not terminate parental rights without first making an individualized determination that the parent is unfit. *Stanley v. Illinois,* 405 U.S. 645, 649 (1972). Once an unfitness determination is made, however, it is the best interests of the child rather than the rights of the parent that is considered "paramount." *See* Wis. Stat. § 48.01. To accommodate the different and sometimes conflicting interests involved, termination of parental rights proceedings are bifurcated into two phases. *Julie A.B.,* 255 Wis. 2d 170, ¶ 24.

¶ 32. The first phase consists of a fact-finding hearing, where the purpose is to determine whether parental unfitness can be proven. Wis. Stat. § 48.424(1). During this first phase, the parent receives a full complement of procedural rights. *Julie A.B.,* 255 Wis. 2d 170, ¶ 24. The burden is on the petitioner to demonstrate by clear and convincing evidence that

grounds for termination exist.[10] *Id.*; Wis. Stat. § 48.31(1). If the petitioner meets that burden, the court must find the parent to be unfit. Wis. Stat. § 48.424(4).

¶ 33. An unfitness finding does not predetermine the ultimate outcome of the proceedings. *Julie A.B.,* 255 Wis. 2d 170, ¶ 28. Rather, a finding of unfitness permits the court to move on to the second phase of the proceedings, the dispositional phase. During the dispositional phase, the court determines whether the parent's rights will be terminated and if so, what will happen to the child. *Steven V.,* 271 Wis. 2d 1, ¶ 26. It is the best interests of the child that is the "polestar" at the dispositional hearing. *Julie A.B.,* 255 Wis. 2d 170, ¶ 30; Wis. Stat. § 48.426(2).

## IV

¶ 34. Under the procedures outlined above, it is during the first phase of an involuntary termination of parental rights proceeding that the parent's interest in the parent-child relationship is most jealously protected. A parent who chooses to enter a no contest plea during this phase is giving up valuable protections and must have knowledge of the rights being waived by

---

[10] Wisconsin Stat. § 48.415 establishes 12 different grounds for termination. Continuing need of protection or services is one of these grounds. *See* Wis. Stat. § 48.415(2).

The procedures outlined in Wis. Stat. ch. 48 are meant to ensure that parental rights will be terminated only "after a deliberative, well considered, fact-finding process utilizing all the protections afforded by the statutes unless there is a specific, knowledgeable, and voluntary waiver." *See M.W. v. Monroe County D.H.S.,* 116 Wis. 2d 432, 437, 342 N.W.2d 410 (1984).

making the plea. *Kenosha County D.H.S. v. Jodie W.,* 2006 WI 93, ¶ 25, 293 Wis. 2d 530, 716 N.W.2d 845 (citing *State v. Bangert,* 131 Wis. 2d 246, 265–66, 389 N.W.2d 12 (1986)).

¶ 35. The principles and analysis of *Bangert* apply. *Waukesha County v. Steven H.,* 2000 WI 28, ¶ 42, 233 Wis. 2d 344, 607 N.W.2d 607; *Jodie W.,* 293 Wis. 2d 530, ¶ 24 n.14. The circuit court must engage the parent in a colloquy to ensure that the plea is knowing, voluntary, and intelligent. This colloquy is governed by the requirements of Wis. Stat. § 48.422(7) and notions of due process. *Steven H.,* 233 Wis. 2d 344, ¶¶ 25, 39.

¶ 36. If the parent can later show that the colloquy was deficient and also alleges that he or she did not know or understand the information that should have been provided, that parent has made a prima facie case that the plea was not knowing, voluntary, and intelligent. *Id.,* ¶ 42. At that point, the burden shifts to the petitioner to demonstrate by clear and convincing evidence that the parent knowingly, voluntarily, and intelligently pled no contest. *Id.*

¶ 37. Here, Brenda alleges two deficiencies. First, she asserts that the court failed to inform her that she was waiving her constitutional right to parent. Second, she asserts that the court failed to inform her of the full range of dispositions. We address these alleged deficiencies in turn.

A

¶ 38. According to Brenda's argument, the court was obligated to inform her that, upon the finding of unfitness, she would lose her constitutional right to

330

parent Desmond. She asserts that informing a parent that the plea will result in a finding of unfitness is insufficient because it does not fully inform the parent of the more solemn loss of the constitutionally protected right to parent his or her child.

¶ 39. Under our statutory scheme, it is not accurate to say that a parent loses his or her constitutional right to parent if the court accepts a no contest plea during the grounds phase. Rather, the immediate consequence of the plea is that the parent will be found to be unfit. *Therese S.*, 314 Wis. 2d 493, ¶ 11; Wis. Stat. § 48.424(4). Even after the parent is found to be unfit, however, the circuit court may in its discretion opt to dismiss the petition after the dispositional hearing, leaving all parental rights intact. Wis. Stat. § 48.427(2).

¶ 40. Therefore, the court was not obligated to inform Brenda that, upon acceptance of her plea, she would lose her constitutional right to parent Desmond. As the court of appeals persuasively explained in a recent unpublished opinion, "[b]ecause Wisconsin statutory law does not permit a court to terminate parental rights upon a finding of unfitness without completing the dispositional phase, we see no rationale for requiring a court to inform a parent that a finding of unfitness results in the automatic loss of the constitutional right to parent." *Dane County D.H.S. v. James M.*, Nos. 2009AP2038 & 2009AP2039, unpublished slip op., ¶ 24 (Wis. Ct. App., Mar. 18, 2010).[11]

---

[11] An unpublished opinion has no precedential value and is not binding on any court of this state. Wis. Stat. § 809.23(3)(b) (as amended by Sup. Ct. Order No. 08–02, 2009 WI 2, 311 Wis. 2d xxv). Nevertheless, an unpublished opinion issued on or after July 1, 2009, that is authored by a member of a three-judge

¶ 41. Nevertheless, whenever a parent wishes to plead no contest to grounds for involuntary termination, the parent must be provided with sufficient information to evaluate the stakes involved. Before a no contest plea can be accepted, a parent must understand that the power of the State may be employed to permanently extinguish any legal recognition of the rights and obligations existing between parent and child. *See Steven V.*, 271 Wis. 2d 1, ¶ 21. The parent must be given sufficient information to understand the rights that could be lost if, during the second phase of the proceedings, the court decides to terminate parental rights.

¶ 42. It is likewise essential for parents to understand that they are agreeing to waive the protections which safeguard parental rights from permanent extinguishment by the State. The parent must be informed that there are a number of procedural trial rights put in place to prevent parental rights from being terminated without cause,[12] and that these rights are waived with the court's acceptance of the plea.

¶ 43. It is important that the parent understand that by pleading no contest to a ground for termination, the parent is waiving the right to make the petitioner prove unfitness by clear and convincing evidence, and that acceptance of the plea will result in a finding that

panel or by a single judge under Wis. Stat. § 752.31(2) may be cited for its persuasive value. *Id.*

[12] *See, e.g.,* Wis. Stat. § 48.23(2) (providing for the right to counsel); Wis. Stat. § 48.31(2) (providing for a right to a jury trial); *State v. Shirley E.*, 2006 WI 129, ¶ 49, 298 Wis. 2d 1, 724 N.W.2d 623.

the parent is unfit. *Therese S.,* 314 Wis. 2d 493, ¶¶ 10–11; *James M.,* unpublished slip op., ¶ 24; *see also* Wis. Stat. § 48.424(4).

██ ██

¶ 44. Finally, the parent must be informed that by pleading no contest to grounds for termination, the parent has waived a fact-finding hearing during the phase of the proceedings in which the parent's rights receive the utmost protection under the Constitution. Should a parent wish to contest termination after he or she is found to be unfit, that parent is left with the sole issue of whether termination of parental rights is in the best interests of the child. Once the parent is found to be unfit, it is the court's determination about what is best for the child rather than any concern about protecting the parent's right that drives the outcome. *Therese S.,* 314 Wis. 2d 493, ¶ 16; *James M.,* unpublished slip op., ¶ 24.

¶ 45. At oral argument, Brenda's counsel advanced that it was necessary for a court to explain that the right to parent derives from the Constitution. We disagree that the word "constitutional" has the talismanic significance attributed to it by counsel. What is essential is that a parent understands the nature and import of the rights involved—not necessarily the source of those rights.

¶ 46. Accordingly, given that a finding of parental unfitness does not necessarily result in an involuntary termination of parental rights, we determine that the circuit court was not obligated to inform Brenda that by pleading no contest she was waiving her constitutional right to parent. We additionally determine that the court need not explain that the right to parent is a constitutional right. What is important is that the

parent understands the import of the rights at stake rather than the sources from which they are derived.

## B

¶ 47. We move next to the question of whether the colloquy was deficient because the court failed to inform Brenda of the full range of dispositions it could enter. Before accepting an admission of the alleged facts in a petition (or in this case, a no contest plea to grounds for termination), a court must determine that it is made with understanding of "the potential dispositions." Wis. Stat. § 48.422(7); *Therese S.*, 314 Wis. 2d 493, ¶ 14.

¶ 48. Wisconsin Stat. § 48.427 is entitled "Dispositions." Subsection (1) mandates that "after receiving any evidence related to the disposition, the court shall enter one of the dispositions specified under subs. (2) to (4)." Those subsections provide:

> (2) The court may dismiss the petition if it finds that the evidence does not warrant the termination of parental rights.
>
> (3) The court may enter an order terminating the parental rights of one or both parents.
>
> (3m) If the rights of both parents or of the only living parent are terminated under sub. (3) and if a guardian has not been appointed under s. 48.977, the court shall [transfer guardianship and custody pending adoption to any one of a number of individuals or agencies enumerated in the statute, or appoint a guardian and transfer guardianship and custody to that guardian].
>
> (3p) If the rights of both parents or of the only living parent are terminated under sub. (3) and if a guardian

has been appointed under s. 48.977, the court may enter one of the orders specified in sub. (3m)(a) or (b). If the court enters an order under this subsection, the court shall terminate the guardianship under s.48.977.

(4) If the rights of one or both parents are terminated under sub. (3), the court may enter an order placing the child in sustaining care under s. 48.428.[13]

¶ 49. Brenda asserts the statute is unambiguous. She contends that the colloquy was deficient because the court discussed only two of the potential dispositions—dismissing the petition and terminating parental rights. Brenda argues that subs. (3m), (3p), and (4) are all "dispositions," and further, that the court was required to inform her of those dispositions prior to accepting her plea.

¶ 50. At first glance, Brenda's argument that the statute is unambiguous appears to have merit. Wisconsin Stat. § 48.427 refers to "one of the dispositions specified under subs. (2) to (4)," which would appear to indicate that subs. (2), (3), (3m), (3p), and (4) are all "dispositions."

¶ 51. Nevertheless, the plain meaning interpretation advanced by Brenda does not pass a closer examination. Subsection (1) provides that a court must enter "one of the dispositions specified under subs. (2) to (4)." Nevertheless, the court cannot simply enter one of the

---

[13] It is appropriate for the court to order sustaining care if it finds that the child is unlikely to be adopted or that adoption is not in the best interest of the child. Wis. Stat. § 48.428(1). When a child is placed in sustaining care, legal custody and guardianship is transferred to a department or agency, and physical placement is in the home of the sustaining parent. Wis. Stat. § 48.429(2). Subject to the authority of the guardian and legal custodian, a sustaining parent has certain rights and responsibilities necessary for the day-to-day care of the child. Wis. Stat. § 48.428(3).

"dispositions" set forth in sub. (3m), sub. (3p), or sub. (4). Rather, it must first enter a disposition terminating parental rights under sub. (3). *See* Wis. Stat. § 48.427(3m), ("If the rights of both parents or of the only living parent are terminated under sub. (3) . . . ."); *id.* § 48.427(3p) ("If the rights of both parents or of the only living parent are terminated under sub. (3) . . . ."); *id.* § 48.427(4), ("If the rights of one or both parents are terminated under sub. (3) . . . .").

¶ 52. Based on the statutory language, it is not accurate to say that there are five independent dispositions, and the court must choose one of them. Rather, the court must first choose between the two independent dispositions set forth in sub. (2), and sub. (3), —it must dismiss the petition or terminate parental rights. If the court terminates parental rights, the court may exercise several alternatives for designating custody, guardianship, and care of the child. The availability of the alternatives set forth in sub. (3m), sub. (3p), and sub. (4), are contingent upon the court's determination that parental rights should be terminated under sub. (3).

¶ 53. The purpose of the statutory requirement that the court inform the parent about the potential dispositions is to provide the parent with information relevant to the plea. In a case such as this where the likely guardianship and custody of the child is known to all parties, it does not further the purpose underlying the colloquy to inform the parent about hypothetical but improbable outcomes.

¶ 54. The court of appeals recently addressed a similar argument in *Therese S.,* 314 Wis. 2d 493. In that case, the mother decided not to contest the county's allegations that there were grounds to terminate her parental rights. The court informed the mother that she was "admitting the grounds for termination but still

leaving open the question as to what's gonna happen, the disposition." *Id.*, ¶ 14. The court explained the concept of "disposition" as follows: "[I]t hasn't been decided yet what we're going to do. Your termination is not actually entered today. We have more work to do to decide what to do." *Id.*

¶ 55. The *Therese S.* court concluded that the colloquy was deficient. "[A]t the very least," the court of appeals concluded, "a court must inform the parent that at the second step of the process, the court will hear evidence related to the disposition and then will either terminate the parent's rights or dismiss the petition if the evidence does not warrant termination." *Id.*, ¶ 16. The court of appeals stopped short of "requiring courts to inform parents in detail of all potential outcomes." *Id.*, ¶ 17.

¶ 56. We agree with the *Therese S.* court and determine that not only would such a requirement be "unduly burdensome," *id.,* but more importantly, it has the potential to confuse or mislead rather than to inform. To render a plea knowing, voluntary, and intelligent, we conclude that the parent must be informed of the two independent dispositions available to the circuit court. That is, the court may decide between dismissing the petition and terminating parental rights.[14]

V

¶ 57. In applying the principles discussed above, we do not provide a specific checklist. The questions to be asked depend upon the circumstances of the case.

---

[14] It is not inconsistent with this opinion, if the court deems it relevant in an individual case, to inform the parent of possible alternatives for designating custody, guardianship, and care of the child.

Under the facts presented here, we conclude that the colloquy provided Brenda with sufficient information to understand the import of the rights at stake. Further, we determine that Brenda received sufficient information to understand the potential dispositions.

¶ 58. During the plea, Brenda was informed that at the dispositional hearing, the power of the State could be employed to permanently extinguish legal recognition of the rights and obligations existing between her and Desmond. Counsel for the County asked if Brenda understood that she "could lose [her] parental rights to Desmond [] at the dispositional hearing," and Brenda stated that she understood. *Supra,* ¶ 16.

¶ 59. Through questioning by counsel for the County, Brenda was provided with additional information to understand the consequences that termination of parental rights would have on her relationship with Desmond. Counsel for the County confirmed her understanding that she could lose custody and the right to care for Desmond, the right to make decisions for Desmond, the right to receive information about Desmond, the right to inherit from Desmond, and the right to visit Desmond. *Id.,* ¶ 17.

¶ 60. Additionally, Brenda was informed that she had a number of procedural rights, and that she was waiving those procedural rights if the court accepted her plea. Specifically, the court informed Brenda that she was waiving the right to call witnesses, the right to cross-examine witnesses, and the right to remain silent without having anyone comment upon her silence. *Id.,* ¶ 11.

¶ 61. Brenda also was advised that her parental rights could not be terminated without the County proving unfitness, and that by pleading no contest, she was waiving the right to have the County prove by clear

338

and convincing evidence that Desmond was in continuing need of protection or services. *Id.*, ¶ 11. Brenda professed to understand that she was "giv[ing] up [her] right to fight the County's allegation" that Desmond was in continuing need of protection or services, and that acceptance of her plea would result in a finding of unfitness. *Id.*, ¶¶ 13, 16.

¶ 62. Further, the court advised Brenda that the standard at the dispositional hearing differed from the standard at the fact-finding hearing. *Id.*, ¶ 14. It explained that at the dispositional hearing, its decision would be made based on Desmond's best interests, and that the court could determine that it would be in Desmond's best interests to terminate her parental rights. *Id.*, ¶¶ 14–15.

¶ 63. The court informed Brenda that during the dispositional phase of the proceedings, the court could dismiss the petition or terminate Brenda's parental rights. *Id.*, ¶ 14. Brenda acknowledged that she was aware of various alternatives that might be available for Desmond's custody, and that Desmond's current foster mother was considered by the County as a proposed adoptive mother. *Id.*, ¶ 18.

¶ 64. Under these circumstances, we conclude that Brenda has failed to present a prima facie case that her plea was not entered knowingly, voluntarily, and intelligently. For that reason, the circuit court did not err by denying Brenda's motion to withdraw her no contest plea.

¶ 65. In sum, given that a finding of parental unfitness does not necessarily result in an involuntary termination of parental rights, we determine that the circuit court was not obligated to inform Brenda that by pleading no contest she was waiving her constitutional right to parent. We additionally determine that the

court need not explain that the right to parent is a constitutional right. What is important is that the parent understands the import of the rights at stake rather than the sources from which they are derived.

¶ 66. We further conclude that the parent must be informed of the independent dispositions available to the circuit court. That is, that the court may decide between dismissing the petition and terminating parental rights.

¶ 67. Finally, we determine that the colloquy in this case fulfilled the requirements set forth above and that Brenda has failed to present a prima facie case that her plea was not entered knowingly, voluntarily, and intelligently. Accordingly, we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.