KESSLER, J.[1]
¶1 T.A.D.S. appeals the order terminating his parental rights to his daughter, T.S. T.A.D.S. argues that his no contest plea was not knowing, intelligent, and voluntary. We affirm.
BACKGROUND
¶2 On September 13, 2017, the State filed a petition to terminate T.A.D.S.'s parental rights to his daughter. The petition alleged abandonment and failure to assume parental responsibility.
¶3 At the final pretrial hearing, T.A.D.S., through counsel, informed the circuit court that he would plead no contest to the abandonment ground. The court then engaged in a lengthy colloquy with T.A.D.S. to assess the voluntariness of his plea, his understanding the rights he was giving up, and to explain the termination procedure moving forward. The court also explained the level of proof required to establish unfitness if T.A.D.S. had chosen to have a trial:
And do you understand that the-at the grounds phase, the burden of proof would be on the State and that would be to show by clear, convincing, and satisfactory evidence that you had not had contact with [T.S.] for a six month period of time. Do you understand that?
T.A.D.S. responded in the affirmative.
¶4 The circuit court also explained the two phases of termination proceedings through the following exchange:
[The Court]: And if I ... make a finding that the State has shown by clear, convincing, and satisfactory evidence that you have abandoned [T.S.] and that you didn't have a contact with her for a six month period, do you understand that if I make that finding that I'll be required to make a finding that you're unfit as a parent. Do you understand that?
[T.A.D.S.]: Yes.
[The Court]: But you also understand that that won't end that case. There's a second part to that, which is the disposition phase. Do you understand that?
[T.A.D.S.]: Yes.
[The Court]: And at that disposition phase you'd have a completely separate trial right, but that would be a court trial only; do you understand that?
[T.A.D.S.]: Yes.
[The Court]: And I know that I told you at that first grounds phase the State would have the burden of proving that there's a basis for this ground by clear, convincing and satisfactory evidence. Have you and your lawyer gotten a chance to talk about-you know, there's actually like three different burdens in the law. In a criminal case, the State has the burden of proving things beyond a reasonable doubt. Do you understand that?
[T.A.D.S.]: Yes.
[The Court]: In this type of case, it's a slightly lower burden. It's clear, convincing, and satisfactory evidence. Do you understand that?
[T.A.D.S.]: Yes.
[The Court]: But there's an even lower burden. Like if you were charged with running a red light or some sort of traffic offense, there would be an even lower burden. That would be what we call the greater weight of the credible evidence. So do you understand that there's three burdens of proof in different cases?
[T.A.D.S.]: Yes.
[The Court]: And on the grounds phase, the State just has to meet that second level of burden of proof. Do you understand that?
[T.A.D.S.]: Yes.
[The Court]: And do you understand that at the disposition phase the Court would have to make a finding that the driving factor, the most important factor at the disposition phase, would be what's in [T.S.'s] best interest. Do you understand that?
[T.A.D.S.]: Yes.
....
[The Court]: And do you understand that at the disposition phase the State would still have that burden of proof of showing what's in [T.S.'s] best interest, but at the end of a trial and a disposition phase, I could decide to terminate your parental rights. Do you understand that?
[T.A.D.S.]: Yes.
¶5 The circuit court also explained that it had multiple disposition options depending on what it would consider to be in T.S.'s best interests, including terminating T.A.D.S.'s parental rights, dismissing the petition altogether, keeping T.S. in foster care, or entering a guardianship order. T.A.D.S. stated that he understood. The court then confirmed with T.A.D.S. that he conferred with counsel and understood the consequences and implications of his no contest plea. The court confirmed T.A.D.S.'s understanding with counsel and also asked: "And do you think [T.A.D.S.] understands the burden of proof that the State would have both at the grounds phase and the disposition phase?" Counsel responded in the affirmative.
¶6 Following the disposition hearing, the circuit court determined that terminating T.A.D.S.'s parental rights was in the best interest of his child.
¶7 T.A.D.S., by postdisposition counsel, filed a notice of appeal and a motion for remand, which this court granted. T.A.D.S. then filed a motion for postdisposition relief, asking the postdisposition court "for an evidentiary hearing and an order vacating the termination of his parental rights to his daughter, T.S., and allowing him to withdraw his no-contest plea" on the grounds that his plea was not knowing, intelligent or voluntary because "the court failed to advise T.A.D.S. during the plea colloquy about the correct statutory standard for the disposition hearing and T.A.D.S. was otherwise unaware of this information." Specifically, T.A.D.S. argued that the circuit court erred in stating that "it could not terminate his parental rights at the disposition hearing unless the State proved by clear, convincing, and satisfactory evidence that termination was in T.S.'s best interest" because the standard at disposition "does not provide for any specific burden of proof for either party; rather, the disposition phase involves a discretionary determination by the [circuit] court based on what is in the child's best interest."
¶8 The postdisposition court denied T.A.D.S.'s motion without a hearing, finding that the circuit court complied with the mandatory duties of conducting plea colloquies, as set forth in WIS. STAT. § 48.422(7), and that the court did not misadvise T.A.D.S. The postdisposition court noted that the circuit court specifically informed T.A.D.S. that he maintained his right to contest the disposition and that its decision would be based on what it determined to be T.S.'s best interests. This appeal follows.
DISCUSSION
¶9 On appeal, T.A.D.S. raises the same issues he raised in his postdisposition motion.
¶10 When a parent alleges that a stipulation was not knowingly, intelligently, and voluntarily made, we apply the Bangert analysis.[2] See Waukesha Cty. v. Steven H. , 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607. Under the Bangert analysis, the parent "must make a prima facie showing that the circuit court violated its mandatory duties and he [or she] must allege that in fact he [or she] did not know or understand the information that should have been provided at the ... hearing." Steven H. , 233 Wis. 2d 344, ¶42. "If [the parent] makes this prima facie showing, the burden shifts to the [State] to demonstrate by clear and convincing evidence that [the parent] knowingly, voluntarily and intelligently waived the right to contest the allegations in the petition." Id. If the parent fails to make a prima facie case, the circuit court may deny the motion without an evidentiary hearing. See id. , ¶43.
¶11 Whether a parent has presented a prima facie case by showing deficiencies in the colloquy and by alleging that the parent did not know or understand the information that should have been provided by the circuit court, is a question of law that we review de novo. See Oneida Cty. DSS v. Therese S. , 2008 WI App 159, ¶7, 314 Wis. 2d 493, 762 N.W.2d 122. In doing so, we look to the totality of the circumstances and the entire record to determine the sufficiency of the circuit court's colloquy. See Steven H. , 233 Wis. 2d 344, ¶42.
¶12 We conclude that T.A.D.S. has not made a prime facie showing that his plea was not knowing, voluntary and intelligent. The crux of his argument is that the circuit court made erroneous comments about the burden of proof at disposition and failed to establish that T.A.D.S. properly understood "the standard that would govern the disposition hearing." This argument fails because the record establishes that T.A.D.S. entered his plea knowingly, voluntarily and intelligently. As the guardian ad litem helpfully summarized in his brief to this court, the circuit court engaged in a lengthy colloquy with T.A.D.S. in which the court: discussed T.A.D.S.'s education; discussed his ability to understand the proceedings based on his health conditions; explained the phases of termination of parental rights proceedings and T.A.D.S.'s rights at both phases; explained the rights T.A.D.S. would be giving up by pleading no contest; explained multiple potential dispositions; established that no promises or threats were made to elicit T.A.D.S.'s plea; confirmed that T.A.D.S. discussed his plea with counsel; and confirmed with counsel that T.A.D.S. understood the consequences of his plea. The court determined, based on T.A.D.S.'s level of education, communication with his counsel, and his responses to the court's questions that he was freely entering a plea of no contest. This was sufficient. See, e.g. , Brown Cty. DHS v. Brenda B. , 2011 WI 6, ¶¶43-44, 331 Wis. 2d 310, 795 N.W.2d 730 (explaining that a parent must understand that by pleading no contest, he or she is waiving the right to make the State prove unfitness by clear and convincing evidence, that the acceptance of the plea will result in a finding of unfitness, and that disposition is determined based on the child's best interests).
¶13 We also conclude that the circuit court's comments about the burden of proof at disposition are irrelevant. The court was clear that its decision at disposition would be based on what it found to be T.S.'s best interests. The court thoroughly explained T.A.D.S.'s rights at the disposition hearing, explained the potential outcomes and unequivocally stated that its primary consideration at disposition was T.S.'s best interest. See Brenda B. , 331 Wis. 2d 310, ¶44. The court's decision reflects that it abided by this standard.
By the Court. -Order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)4.

This appeal is decided by one judge pursuant to Wis. Stat. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

See State v. Bangert , 131 Wis. 2d 246, 389 N.W.2d 12 (1986).