COURT OF APPEALS
DECISION
DATED AND FILED

**April 2, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos.  **2024AP1991**
**2024AP1992**
**2024AP1993**

Cir. Ct. Nos.  2024TP12
2024TP13
2024TP14

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.H.,
A PERSON UNDER THE AGE OF 18:

BROWN COUNTY,

    PETITIONER-RESPONDENT,

  V.

N. H.,

    RESPONDENT-APPELLANT.

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.H.,
A PERSON UNDER THE AGE OF 18:

BROWN COUNTY,

    PETITIONER-RESPONDENT,

  V.

N. H.,

**RESPONDENT-APPELLANT.**

---

**IN RE THE TERMINATION OF PARENTAL RIGHTS TO G.H.,
A PERSON UNDER THE AGE OF 18:**

**BROWN COUNTY,**

    **PETITIONER-RESPONDENT,**

  **V.**

**N. H.,**

    **RESPONDENT-APPELLANT.**

---

APPEAL from orders of the circuit court for Brown County: TIMOTHY A. HINKFUSS, Judge. *Affirmed*.

¶1 HRUZ, J.[1] In these consolidated appeals, Nathaniel[2] appeals orders of the circuit court terminating his parental rights to his children, Derrick, Daniel, and Gemma, and denying his postdispositional motion to dismiss the termination of parental rights (TPR) proceedings. Nathaniel argues that the court erred by denying his postdispositional motion because he was not properly served with the summons and petitions or the notices of the TPR hearings. For the reasons that follow, we affirm the circuit court's orders.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] For ease of reading and to protect confidentiality, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials. We do the same for any of Nathaniel's family members referenced in this opinion.

2

## BACKGROUND

¶2     Derrick, Daniel, and Gemma were removed from their mother's care in December 2020, due to heroin and drug paraphernalia being found within the mother's home and within the children's reach.  At the time, Nathaniel did not live with the children's mother and there were allegations that Nathaniel abused her.[3]  In October 2021, the circuit court adjudged the children to be in need of protection or services (CHIPS).  Thereafter, Nathaniel visited his children only once, in December 2021.

¶3     In April 2024, Brown County filed TPR petitions against Nathaniel, on grounds of abandonment and continuing CHIPS under WIS. STAT. § 48.415(1)(a)2. and (2)(a), respectively.  After attempts of personal service on Nathaniel failed, notice regarding the grounds phase of the TPR process was mailed to a homeless shelter, where Nathaniel was last known to be residing.  Specifically, an affidavit of service by mail indicates that a hearing notice was mailed to the homeless shelter on April 11, 2024.  The mailed notice correctly stated that the hearing would take place on May 6, 2024, at 8:30 a.m. at the Brown County courthouse.  Neither that mailing nor any other mailing sent to Nathaniel at the homeless shelter regarding the TPR proceedings was ever returned as undeliverable.

¶4     On April 25, 2024, the circuit court entered an order for publication of the notice of the initial TPR hearing, finding that the County had "implemented reasonable diligence in attempting to serve" Nathaniel, and, "pursuant to WIS. STAT.

---

[3] The children's mother died in August 2022.  Her death is unrelated to the domestic abuse allegations against Nathaniel.  We do not discuss the children's mother any further.

§ 48.977(4)(c)2.,"[4] Nathaniel could not be served by mail.[5]  The order stated that service would consequently be made "by publication of a notice published as a class 1 notice under [WIS. STAT. ch.] 985."  The published notice erroneously stated that the hearing would take place on May 5, 2024, at 8:30 a.m.[6]

¶5      Nathaniel did not appear at the May 6, 2024 grounds hearing.  The County noted that it did not have any contact with Nathaniel about the TPR petitions and that it also had "very sporadic" contact with Nathaniel regarding the children's CHIPS cases.  The circuit court heard testimony from the County's child protection supervisor, found Nathaniel in default, and found Nathaniel an unfit parent pursuant to WIS. STAT. § 48.424(4).  The court then scheduled a dispositional hearing for June 4, 2024.

¶6      Nathaniel did not appear at the June 4, 2024 dispositional hearing.  At that hearing, the circuit court heard testimony from the children's ongoing case

---

[4] We are unsure why the circuit court looked to WIS. STAT. § 48.977(4)(c)2.—which provides the service procedure for the appointment of guardians for certain children in need of protection or services—as opposed to WIS. STAT. § 48.42(4)—which provides the general procedure, including service, for the TPR process.  We note that § 48.977(4)(c)2. permits service via personal service, mailed notice, and publication; whereas § 48.42(4) only permits service via personal service and publication and includes mailing notices within the publication procedure.

At the postdispositional hearing regarding the sufficiency of service, the court referenced WIS. STAT .§ 48.42(4) and did not mention WIS. STAT. § 48.977(4)(c)2.  That the postdispositional court cited § 48.977(4)(c)2. in its publication order does not affect our analysis, as the court eventually considered whether the County exercised reasonable diligence in both attempting to personally serve Nathaniel and attempting to serve Nathaniel via publication, which includes mailing a notice that complies with the procedure set forth in § 48.42(4).

[5] The circuit court did not explicitly state why service could not be completed via publication by the mailed notices, even though the mailed summons and petitions including the notices were not returned.

[6] We note that May 5, 2024, was a Sunday.  *See generally* WIS. STAT. § 902.01(2)(b) (stating that a court may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned").

worker, Clare Kelly, again found Nathaniel in default, considered each child's best interests (using the factors set forth in WIS. STAT. § 48.426(3)), and found that terminating Nathaniel's parental rights was "in the best interest[s] of all the children." The court then ordered the termination of Nathaniel's parental rights to all three children.

¶7 Nathaniel's counsel filed a no-merit report, concluding that further proceedings would lack arguable merit. Upon our independent review of the appellate record, this court noted that the appellate record lacked evidence that the County used reasonable diligence in attempting to personally serve Nathaniel, as required by WIS. STAT. § 48.42(4)(b)1. We also noted that the published notice of the grounds hearing stated that the hearing would take place on May 5, 2024, whereas the actual date was May 6, 2024. We rejected the no-merit report and set a deadline for Nathaniel to either file an appellate brief and appendix or move to remand the matters for further proceedings in the circuit court. Nathaniel moved to remand the proceedings to the circuit court, and we granted the motion.

¶8 Nathaniel then filed a motion for postdispositional relief, seeking dismissal of the cases due to the circuit court's lack of personal jurisdiction over him. Specifically, Nathaniel argued that the court lacked personal jurisdiction over him because he was not properly served with the required pleadings and he did not otherwise submit to the jurisdiction of the court. Nathaniel also noted that the published hearing notice included an incorrect hearing date.

¶9 The circuit court held a hearing on the motion, at which Todd Campbell, a deputy for the Brown County Sheriff's Department, testified to the facts regarding his efforts to personally serve Nathaniel. Campbell's testimony

and a "Certificate of Service" that was introduced as an exhibit showed that on April 12, 2024, Campbell attempted to serve Nathaniel at a specific housing unit in Green Bay, but he discovered that this address was vacant. On April 15, Campbell attempted to serve Nathaniel at his last known address, a homeless shelter in Green Bay, but he was again unsuccessful. Campbell then called the homeless shelter, attempting to contact Nathaniel, on April 16, 22, 23 and 25.

¶10     Kelly also testified at the postdispositional hearing. Kelly stated that she was "involved in notifying" Nathaniel of the TPR hearings, that she called him on "various phone numbers that he … provided," and that she called the daytime resource center that "[Nathaniel] frequented."[7] Kelly also stated that she mailed "[a]t least one or two" "letter(s)" containing the hearing dates to Nathaniel at the homeless shelter.

¶11     Kelly also testified that she received a voicemail from Nathaniel sometime in the afternoon on May 6, 2024. In the voicemail, as summarized by Kelly, Nathaniel acknowledged that he was aware that the grounds hearing was held earlier that day, and he asked about the hearing.[8] Kelly also testified regarding her

---

[7] The daytime resource center that Nathaniel frequented is operated by the same entity that operates the homeless shelter at which Nathaniel was known to stay. According to Kelly, when people leave the homeless shelter, "they go to the [daytime resource center] during the day." The homeless shelter and daytime resource center are located "approximately two blocks from each other."

[8] A USB device containing the voicemail was admitted into evidence at the postdispositional hearing, with no objection. This court was not sent a copy of the USB for this appeal. Rather, the appellate record transmitted to this court contains only a picture of a USB with a label denoting it as "Exhibit 3."

efforts to make Nathaniel aware of the forthcoming dispositional hearing. Nathaniel testified that his mailing address was the address of the daytime resource center.

¶12 Rachel Porath, a juvenile court coordinator, testified that she spoke with Nathaniel at the local Register in Probate office in the "middle part" of May. Nathaniel asked Porath "many questions about what was going on with his children," and she then handed him a notice of the next hearing in the TPR cases, which was the dispositional hearing.

¶13 The circuit court found that the County exercised reasonable diligence in its attempts to personally serve Nathaniel prior to the publication. Importantly, the court also found that Nathaniel *did* receive the summons by mail during the service-by-publication process. Based on the lack of testimony that Nathaniel actually attempted to appear at the hearing on May 5, 2024 and the fact that he left a voicemail with Kelly on May 6 stating his understanding that the hearing happened earlier that day, the court found that Nathaniel had received notice of the proper date of the hearing and simply chose not to come. In particular, the court noted that the homeless shelter's policy was to hold mail for up to thirty days and that no mail was returned as undeliverable. The court later repeated its finding that it was "likely" that Nathaniel received the mailed notice of the grounds hearing. The court also noted that Nathaniel was personally handed a notice of the dispositional hearing in advance of it and did not appear at that hearing either. Accordingly, the court denied

---

The audio of the voicemail was apparently "distorted" and difficult to understand. Kelly averred that the recording was an accurate recording of the voicemail, and she summarized the contents of the voicemail as Nathaniel acknowledging that the grounds hearing took place that day, May 6, 2024, and asking about the hearing. Nathaniel has not raised any arguments—either at the motion hearing or on appeal—regarding the admission of the USB into evidence, Kelly's summary of the voicemail's contents, or the circuit court's factual finding that Nathaniel left a voicemail on May 6 asking how the hearing that day went.

Nathaniel's postdispositional motion, specifically finding "that the court had jurisdiction because [Nathaniel] was properly served." Nathaniel now appeals.

## DISCUSSION

¶14 Nathaniel argues that the circuit court erred by denying his postdispositional motion to dismiss the TPR cases because the published notice of the hearing contained the wrong hearing date, which he argues is a fundamental error that precluded the court from having personal jurisdiction over him.[9] *See O'Donnell v. Kaye*, 2015 WI App 7, ¶8, 359 Wis. 2d 511, 859 N.W.2d 441 (2014) ("While a 'fundamental' defect in service precludes the exercise of personal jurisdiction, a 'technical' defect does not preclude jurisdiction in the absence of prejudice.") "The service of a summons in a manner prescribed by statute is a condition precedent to a valid exercise of personal jurisdiction."[10] *See State v. One 1997 Ford F-150*, 2003 WI App 128, ¶9, 265 Wis. 2d 264, 665 N.W.2d 411. An order is void if the circuit court lacked personal jurisdiction, *see Wengerd v. Rinehart*, 114 Wis. 2d 575, 578-79, 338 N.W.2d 861 (Ct. App. 1983), and it may therefore be reopened under WIS. STAT. § 806.07(1)(d).

¶15 "Whether a particular defect is technical or fundamental is a question of law we review de novo. The burden of establishing that a defect was technical is

---

[9] Given the evidence presented at the postdispositional hearing, Nathaniel does not contest that the County used reasonable diligence, as required by WIS. STAT. § 48.42(4)(b)1., in attempting to personally serve him, leading up to the service by publication.

[10] WISCONSIN STAT. § 48.42(4)(a) provides that "[s]ervice of summons is not required if the party submits to the jurisdiction of the court." Here, there is no evidence that Nathaniel ever submitted to the circuit court's jurisdiction. He did not appear at the circuit court proceedings or participate in those proceedings in any way, and the court's order denying Nathaniel's postdispositional motion expressly found that Nathaniel "did not submit to the jurisdiction of the court."

on the party who committed the error." ***O'Donnell***, 359 Wis. 2d 511, ¶9. In discussing the County's efforts to serve Nathaniel, the circuit court made factual findings, which we uphold unless they are clearly erroneous. *See id.*, ¶6; ***Welty v. Heggy***, 124 Wis. 2d 318, 324, 369 N.W.2d 763 (Ct. App. 1985). "A finding of fact is clearly erroneous when it is against the great weight and clear preponderance of the evidence." ***Hennessy v. Wells Fargo Bank, N.A.***, 2022 WI 2, ¶38, 400 Wis. 2d 50, 968 N.W.2d 684 (citation omitted).

¶16    "Wisconsin courts have consistently looked to the purpose of the statute when interpreting whether fundamental or technical defects exist under statutes prescribing the manner of service." ***Mahoney v. Menard Inc.***, 2011 WI App 128, ¶6, 337 Wis. 2d 170, 805 N.W.2d 728 (citation omitted). "[W]hen a pleading that contains a defect nevertheless comports with the purpose and nature of a statute, the defect is generally technical." ***Schaefer v. Riegelman***, 2002 WI 18, ¶29, 250 Wis. 2d 494, 639 N.W.2d 715.

¶17    The statute under which the County attempted to serve Nathaniel is WIS. STAT. § 48.42(4), which provides:

> (a) *Personal service.*
>    Except as provided in this paragraph, par. (b), and sub. (2g)(ag), a copy of the summons and petition shall be served personally upon the parties specified in sub. (2), if known, at least 7 days before the date of the hearing….
>
> (b) *Constructive notice.*
>    1. If with reasonable diligence a party specified in sub. (2) cannot be served under par. (a), service shall be made by publication of the notice under subd. 4.
>
>     ….
>
>    4.   A notice published under this subsection shall be published as a class 1 notice under [WIS. STAT.] ch. 985…. If the party's post-office address is known or can, with due

9

> diligence, be ascertained, a copy of the summons and petition shall be mailed to the party upon or immediately prior to the first publication. The mailing may be omitted if the petitioner shows that the post-office address cannot be obtained with due diligence. Except as provided in subd. 5., *the notice shall include the date*, place and circuit court branch for the hearing, the court file number, the name, address and telephone number of the petitioner's attorney and information the court determines to be necessary to give effective notice to the party or parties.

(Third emphasis added.)

¶18 We are unaware of, and the parties do not cite, any legal authority delineating the purpose of the notice requirements in WIS. STAT. § 48.42(4) or the effect of any errors in the notice process. Accordingly, we look at cases interpreting the purpose of a similar notice statute; we conclude such a statute is WIS. STAT. § 801.11, which provides the general procedure for serving a summons in a civil case. This court has previously concluded that the purpose of § 801.11 is "twofold." ***O'Donnell***, 359 Wis. 2d 511, ¶10; *see generally* § 801.11. First, it gives "the defendant notice of the lawsuit." ***O'Donnell***, 359 Wis. 2d 511, ¶10. Second, it establishes "the court's authority over the defendant with respect to the dispute." ***Id.***

¶19 A TPR summons and petition contain both of these purposes. However, those documents are materially different from a summons served under WIS. STAT. § 801.11 in that they must also contain "the nature, location, date and time of the initial hearing" and must "[a]dvise the parties of the possible result of the hearing and the consequences of failure to appear or respond." *See* WIS. STAT. § 48.42(3). Section 801.11 contains no such requirements. This omission is understandable, given that the summons itself, in a general civil case, notes that the next action to be taken by the served party is not a court appearance, but, rather, the

filing and service of a timely responsive pleading. *See generally* § 801.11. A TPR summons, thus, has a third purpose not found under § 801.11—namely, providing the parent(s) with actual notice of the nature, location, date, and time of the initial hearing. In this sense, we agree with Nathaniel that one of "[t]he purpose[s] of the published summons was to advise [him] when and where to show up to state his position on the petition[s]" and that "knowing where and when to appear for court is the most important information a nonpetitioning party needs to know to preserve the party's rights."[11]

¶20 The County concedes that the published notice of the hearing contained the wrong hearing date, and, in so doing, it failed to comply with the publication procedure of WIS. STAT. § 48.42(4)(b). The County argues, however, that this error was a technical error, "akin to" a summons that was served but unsigned. The County also argues that the purpose of the publication was fulfilled by the published notice, as it provided Nathaniel with "all of the information he needed to understand that a lawsuit was commenced regarding his parental rights and that it was being heard in Brown County Circuit Court Branch VII." In the County's eyes, the incorrect date in the published version of the hearing notice can be overlooked in all events.

¶21 The County's argument is troubling and unconvincing, given the plain language of WIS. STAT. § 48.42(4) and the important context of a TPR proceeding. Our supreme court has repeatedly emphasized that "[p]arental rights termination adjudications are among the most consequential of judicial acts, involving as they

---

[11] We note that our analysis of the purpose of WIS. STAT. § 48.42 is incomplete, insofar as neither the County nor Nathaniel cite any legal authority analyzing the purpose of a service statute in which the first action required by the served party is an appearance at a court hearing.

do 'the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'" *Steven V. v. Kelley H.*, 2004 WI 47, ¶21, 271 Wis. 2d 1, 678 N.W.2d 856 (citation omitted); *see also* ***Brown Cnty. Dep't of Hum. Servs. v. Brenda B.***, 2011 WI 6, ¶30, 331 Wis. 2d 310, 795 N.W.2d 730. As such, "due process requires that '[w]hen the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures.'" *Steven V.*, 271 Wis. 2d 1, ¶23 (alteration in original; citation omitted). In this context, we conclude that a petitioner in a TPR case relying solely upon service by publication must include, among other information, the correct date and time of the initial hearing. Any constructive notice without this critical information cannot ensure that service was accomplished as contemplated by § 48.42(4)(b)4., such that a parent can protect against being in default at the grounds phase of that parent's TPR proceeding by failing to appear.

¶22     In this case, however, we agree with the circuit court that service on Nathaniel was accomplished, despite the plain defect in the published notice. The factual circumstances of this case are unique in the sense that, while the published notice listed the wrong date of the TPR grounds hearing, the evidence supports the court's finding that Nathaniel was mailed, and received copies of the summons and petitions, as required by WIS. STAT. § 48.42(4)(b)4., which contained notice of the *correct* hearing date. We conclude that, under these circumstances, the error contained in the publication notice alone amounted to a technical defect.

¶23     This conclusion derives from the circuit court's factual finding that Nathaniel received the mailed copies of the summons and petitions sent to him under the WIS. STAT. § 48.42(4) requirement, and the undisputed fact that the notice *did* contain the correct date for the hearing. As the "sole arbiter of credibility issues"

and the trier of fact, *see State v. Sloan*, 2007 WI App 146, ¶21, 303 Wis. 2d 438, 736 N.W.2d 189, the court did not find credible Nathaniel's statement that he did not receive the mailed notice of the hearing. Rather, the court found that the mailed notices were "delivered" and that Nathaniel "clearly had notice, but he chose not to come." The court based this finding on: (1) the lack of evidence that Nathaniel attempted to appear on May 5, 2024;[12] (2) the fact that May 5, was a Sunday; (3) the voicemail played for the court in which Nathaniel referenced the hearing as having taken place earlier on May 6; (4) Nathaniel knew how to contact the Register in Probate office; (5) mail that was sent to Nathaniel at the homeless shelter was not returned; (6) that the daytime resource center Nathaniel claimed was his proper mailing address is operated by the same entity that operates the homeless shelter to which the summons and notice were mailed; and (7) Nathaniel had a printed notice of the dispositional hearing yet chose not to appear.[13]

¶24 Nathaniel does not contest the circuit court's findings in this regard, much less argue that they are clearly erroneous. Further, after our independent review of the record, we conclude that the court's findings are not against the great weight and clear preponderance of the evidence. *See Hennessy*, 400 Wis. 2d 50, ¶38. Thus, we uphold the court's factual findings. Based on those findings, the mailed notice of the hearing that was received by Nathaniel provided him with notice of the TPR petitions; established the court's authority over Nathaniel; and

---

[12] We also note that Nathaniel did not present any evidence indicating that he actually saw or reviewed the published notice of the summons containing the wrong hearing date.

[13] We note that the fact that he clearly knew of the dispositional hearing and chose not to appear supports the circuit court's finding that he knew of the grounds hearing and chose not to appear.

provided him with actual notice of the nature, location, *date* and time of the initial hearing.[14]  Accordingly, the purposes of WIS. STAT. § 48.42(4)(c) were accomplished.

¶25    While the existence of two different dates for the initial hearing may have been confusing, Nathaniel could have easily clarified any confusion regarding which date was the correct date (assuming he ever saw the published notice). Nathaniel could have done so by contacting one of the many different resources available to him, but he neglected to do so.

¶26    In sum, we conclude that the circuit court did not err by finding that Nathaniel received the mailed summons and petitions under WIS. STAT. § 48.42(4), as part of the service-by-publication process.  Accordingly, under the particular facts of this case, having the wrong hearing date in the published notice was a technical defect that did not deprive the court of its personal jurisdiction over Nathaniel.  To be clear, however, we need not, and do not, reach a conclusion as to whether a more egregious error in service of a TPR summons and petition through publication would be a technical or fundamental defect.

*By the Court.*—Orders affirmed.

---

[14] We pause to note that the circuit court's initial finding, in its publication order, that Nathaniel could not be served by publication via the mailed summons and petitions is not fatally incongruent with its later finding that Nathaniel did, in fact, receive the mailed summons and petitions.  As noted above, *see supra* n.5, we infer that the court based its initial decision on the lack of any confirmation that Nathaniel had actually received the mailed summons and petitions. At the postdispositional hearing, the court explained its conclusion that Nathaniel did actually receive the mailed summons and petitions as being based on the evidence provided at the hearing as it pertains to the seven bases noted above.

This opinion will not be published. *See* W<small>IS</small>. S<small>TAT</small>. R<small>ULE</small> 809.23(1)(b)4.