[Case No. 2012AP1121]

IN RE the TERMINATION OF PARENTAL RIGHTS TO
KEYLEN D. K., a person under the age of 18:

RACINE COUNTY HUMAN SERVICES DEPARTMENT,
Petitioner-Respondent,

v.

LATANYA D. K., Respondent-Appellant.†

[Case No. 2012AP1122]

IN RE the TERMINATION OF PARENTAL RIGHTS TO
KEELENA T. K., a person under the age of 18:

RACINE COUNTY HUMAN SERVICES DEPARTMENT,
Petitioner-Respondent,

v.

LATANYA D. K., Respondent-Appellant.†

Court of Appeals

*Nos. 2012AP1121, 2012AP1122.*
*Submitted on briefs December 13, 2012.*
*—Decided January 11, 2013.*

2013 WI App 28

(Also reported in 828 N.W.2d 251.)

† Petition for review denied 6-14-13.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Brian C. Findley* of Darlington.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Corinne L. Balter*, assistant district attorney, and *W. Richard Chiapete*, district attorney.

Before Brown, C.J., Neubauer, P.J. and Reilly, J.

¶ 1. BROWN, C.J. Latanya D.K. appeals from the termination of her parental rights resulting from her sexual assault of a thirteen-year-old boy. The petition alleged grounds for terminating Latanya's parental rights because her crimes were "child abuse" under WIS. STAT. § 48.415(5)(a) (2009–10)[1] and her children were in "continuing need of protection or services" (CHIPS) under § 48.415(2)(a). Latanya admitted these facts but now seeks to withdraw her admissions.

---

[1] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

¶ 2. Latanya's major arguments[2] raise an important question: must the court engage in a personal colloquy with a parent regarding his or her waiver of the right to a jury trial before accepting the parent's admission that grounds for termination of parental rights exist? We conclude that due process does not require that the court engage in a personal colloquy

---

[2] Latanya articulates the issues as follows:

1. Was the court's failure to inform Latanya of the right to jury trial, as required by statute, harmful as a matter of law where she never had the opportunity to exercise that right?

 . . . .

2. Was counsel ineffective for failing to preserve the right to a jury trial?

 . . . .

3. Is the right to request a jury trial in a TPR case pursuant to [Wis. Stat.] § 48.31(2) personal to the parent? If it is not, must the attorney discuss the right with the parent prior to electing to not request a jury trial?

 . . . .

4. Could the trial court rely on a petition that did not list any services or conditions for return to establish a factual basis for the admissions?

 . . . .

5. Was the plea colloquy legally sufficient where it did not inform Latanya that she had to have been convicted of a crime where she caused "injury" to a child?

 . . . .

6. Were Latanya's admissions knowingly, intelligently and voluntarily entered?

 . . . .

7. Should the court grant a new trial in the interests of justice?

We address first the jury trial arguments, issues 1 through 3, and then the remaining arguments.

with the parent to confirm the parent's waiver of the jury trial right on grounds for TPR. Here, though the court did not personally ask Latanya whether she wished to waive her right to a jury trial, the record makes clear that Latanya did knowingly, intelligently, and voluntarily waive that right. That is the benchmark. Because this challenge and the rest of Latanya's challenges fail, we affirm.

## Factual Background

¶ 3. In May 2010, the Racine County Human Services Department placed Latanya's young children in foster care after an investigation revealed that Latanya, then twenty-three years old, had been initiating sex with a thirteen-year-old neighbor boy. During the investigation, the victim detailed numerous sex acts that Latanya had initiated, and his younger brother told investigators that he saw Latanya watching pornography while her children were present. Latanya pled guilty to second-degree child sexual assault and child sexual enticement and received a two-year prison sentence.

¶ 4. In August 2011, with Latanya in prison and her children in foster care, the Racine County Human Services Department filed a petition to terminate Latanya's parental rights.[3] At the first hearing, Latanya denied the allegations and requested adjournment and substitution of the judge. The court[4] noted good cause to exceed the statutory time limit for setting the jury

[3] The Racine County Human Services Department also petitioned to terminate the rights of the children's unknown father. Those rights were terminated and are not at issue in this appeal.

[4] Judge Allan B. Torhorst was the initial judge assigned to the case.

trial in TPR cases.[5] At the next hearing, a new judge had been substituted,[6] and the parties set October 11, 2011, as the date for "the injunction hearing and . . . for a pretrial."

¶ 5. Unfortunately, for the next three months nothing substantive was accomplished in the case, while the parties awaited appointment of a new lawyer for Latanya. Not until a mid-December status conference did Latanya and her new lawyer appear together in court. At that hearing the court described the TPR proceedings, addressing Latanya personally, and explaining that "in Phase One you have a trial, jury trial. Your attorney's going to explain all of the procedures involved in a jury trial." The court went on to explain that the actual disposition would be made by the court in Phase Two: "[T]hat is the ultimate end of the game for the termination of parental rights, either/or, up or down for this Court to make that kind of decision." Another status hearing was set for January 2012.

¶ 6. At the start of the January hearing, the court advised Latanya more specifically about her rights in the proceedings. Somewhat confusingly, given the court's prior references to a potential jury trial, the court stated that Latanya's jury trial right had been waived because her first attorney failed to file a demand. Latanya did not question the court's statement and did not object to the waiver of her jury trial right. Instead, she told the court she wished to forego any trial of Phase One at all and instead stipulate to the facts establishing grounds for termination.

[5] Under WIS. STAT. § 48.422(2), the jury trial in TPR cases should be set within forty-five days of the filing of the petition, if the petition is contested.

[6] Judge Richard J. Kreul took the place of Judge Torhorst in the proceedings.

¶ 7. Before accepting Latanya's admissions, the court engaged in a long and careful personal colloquy. This was not a perfunctory or rushed colloquy. As the court observed at the postremand hearing, "'That colloquy was deliberate. It was—it was very thorough, very complete and very considerate."[7] Throughout the colloquy, the court over and over patiently sought Latanya's confirmation that she understood what she was admitting, that she had had enough time to consult with her attorney, that she had had time to think about the decision, and that she was stipulating of her own free will, without coercion.

¶ 8. After the court completed its questioning, the Human Services Department sought to clarify more precisely the factual basis for the grounds for termination, including the specific elements of each ground. Latanya admitted each element. Latanya's attorney then confirmed that she and Latanya had discussed together the nature of the proceedings, Latanya's rights, what the State would have had to prove at a trial, and the consequence of her admissions. At the very end of the hearing, the court gave Latanya one final warning and chance to change her mind.

---

[7] To illustrate with just one example: At one point, as they were engaged in the colloquy, Latanya expressed, "I really care about my kids and I don't want them to go," and the court stopped to re-emphasize that Latanya must understand what was at stake, and then challenged whether Latanya was sure about the decision: "Tell me what you plan to do here. [D]o you still want to stipulate . . . that there are sufficient grounds that the Court can find you unfit and move to [P]hase [T]wo, is that still what you want?" Latanya confirmed that yes, this was what she wanted, and the colloquy continued.

The court also asked, "[H]ow long do you think realistically you have really given some thought to your decision to stipulate to the grounds?" Latanya answered that it had been a "[c]ouple of weeks."

Okay. Latanya, when we are on the record with you like this and everything is being taken down by my reporter and you say something and it's been under oath, it's binding. It's not like you can walk away, change your mind, and come back and we can say, well, I didn't understand what was going on. Do you understand that?

Latanya answered, "Yes." Only then did the court finally accept her admission to the existence of grounds for finding her an unfit parent.

¶ 9. The second stage of the proceedings, to decide whether termination was in the children's best interests or whether some other disposition was appropriate, took place in February 2012. The court concluded that the children's best interests required termination of Latanya's parental rights to facilitate their permanent adoptive home.

¶ 10. On appeal, Latanya challenges her waiver of a jury trial on the existence of grounds for termination, arguing that her admissions were invalid for various reasons, and also argues that she received ineffective assistance of counsel. While the case was pending on appeal, the circuit court[8] took evidence relevant to Latanya's postremand motion on these issues and denied the motion. She now raises the issues with this court.

### The Jury Trial Right in TPR Proceedings

¶ 11. Latanya's main argument is that she should be granted a new trial because she never waived her right to a jury trial personally during a colloquy with the judge. She points out that her first attorney failed to file a jury trial demand, and that, despite having told

---

[8] Judge Michael J. Piontek completed the postremand proceedings, after Judge Kreul's retirement.

Latanya at the December hearing that she had a right to a jury trial, the court at the January hearing asserted that her jury trial right already had been waived. In these circumstances, Latanya urges, "the County cannot carry its burden of showing that Latanya did in fact know of the right to a jury trial before the opportunity to exercise that right expired." Also, in her view, her first counsel's failure to file a jury demand establishes ineffective assistance of counsel as a matter of law.

¶ 12. Latanya is correct that the right to a jury trial in TPR proceedings is of great importance. A parent's interest in raising his or her own children is a "fundamental liberty interest," *Brown Cnty. DHS v. Brenda B.*, 2011 WI 6, ¶ 29, 331 Wis. 2d 310, 795 N.W.2d 730, "that undeniably warrants deference and, absent a powerful countervailing interest, protection," *id.* No matter the "countervailing interest," the State may not terminate the parental relationship without due process of law. *See Stanley v. Illinois*, 405 U.S. 645, 651, 658 (1972). Furthermore, in proceedings to determine a parent's fitness, due process requires that the State must prove unfitness by at least "clear and convincing evidence." *Santosky v. Kramer*, 455 U.S. 745, 769 (1982). If evidence concerning the grounds for termination is in dispute, the parent is entitled to a jury trial on that issue. *See Stanley*, 405 U.S. at 658 ("all Illinois parents are constitutionally entitled to a hearing on their fitness before their children are removed from their custody").

¶ 13. Recognizing the fundamental importance of parental rights, the Wisconsin legislature has mandated numerous procedural protections in TPR proceedings. *See, e.g.,* WIS. STAT. §§ 48.41 (protecting

against mistakes in the adjudication of voluntary terminations), 48.415, 48.417, 48.42, and 48.422 (requirements and procedures applicable in adjudication of contested petitions). The first step is a hearing to determine whether there is clear and convincing evidence demonstrating parental unfitness under § 48.415. *See Brenda B.*, 331 Wis. 2d 310, ¶¶ 31–32. Only after a finding of unfitness may the court proceed to the second step, the dispositional hearing, to determine whether termination of the parent's rights is in the child's best interests. *See id.*, ¶ 33.

¶ 14. A jury trial during the first phase, to determine grounds for termination of parental rights, may be demanded by any party "necessary to the proceeding or whose rights may be affected by an order terminating parental rights," so long as the demand is made "before the end of the initial hearing on the petition." Wis. Stat. § 48.422(4). The court is required by statute to inform the parties of this jury trial right. Sec. 48.422(1). The court also may not accept a parent's admission that the facts establish grounds for termination without following specific statutory procedures designed to ensure the parent knows and understands the nature of his or her admissions and the rights being waived and that a factual basis for the admissions actually exists.[9] *See* sec. 48.422(7).

---

[9] The court must: (1) address the parties to determine that the admission is voluntary and "with understanding of the nature of the acts alleged . . . and the potential dispositions," (2) establish that no promises or threats were made to motivate the admission, (3) establish whether a proposed adoptive parent has been identified, (4) establish that there was no coercion of the parent, and (5) establish that a factual basis exists for the admission. Wis. Stat. § 48.422(7).

¶ 15. With these heightened procedural protections in place, our review of a parent's motion to withdraw his or her admissions to grounds for termination of parental rights is similar to review of a criminal defendant's motion to withdraw a guilty plea under *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986). *See Brenda B.*, 331 Wis. 2d 310, ¶ 35 ("principles and analysis of *Bangert* apply"). If the court has accepted a parent's admissions to the grounds for termination, the parent may not later withdraw those admissions unless he or she makes a prima facie showing that the court failed to satisfy the requirements of WIS. STAT § 48.422(7). *Steven H. v. Waukesha Cnty.*, 2000 WI 28, ¶ 42, 233 Wis. 2d 344, 607 N.W.2d 607. If the parent demonstrates an error, the burden shifts to the state to establish with clear and convincing evidence that the admissions were nonetheless knowing, intelligent, and voluntary. *Id.*

¶ 16. However, while both TPR proceedings and criminal proceedings are subject to heightened procedural safeguards, a parent's interest in parenting his or her children is not identical to an individual's interest in remaining free from physical restraint. The right to physical liberty is recognized in our legal system as the pinnacle of liberty interests. *See generally Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 26–27 (1981) ("[A]n indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty. It is against this presumption that all the other elements in the due process decision must be measured."). The right to a jury trial regarding criminal guilt is constitutional, and our supreme court has "mandate[d] the use of a personal colloquy in every case where a criminal defendant seeks to waive his or her right to a

jury trial." *State v. Anderson,* 2002 WI 7, ¶ 29, 249 Wis. 2d 586, 638 N.W.2d 301.

¶ 17. In TPR proceedings, in contrast, the right to a jury trial is statutory. *See Steven V. v. Kelley H.,* 2004 WI 47, ¶ 34, 271 Wis. 2d 1, 678 N.W.2d 856. Summary judgment on the existence of grounds for termination is proper, in appropriate cases, where there is no genuine issue of material fact in dispute regarding the grounds and the moving party is entitled to judgment as a matter of law. *Id.* And no statute or case has imposed the obligation mandated in *Anderson* for jury trial waivers in criminal cases that they must in all cases be made on the record by the defendant personally, in colloquy with the court.

¶ 18. Latanya argues that she is entitled to a new trial because "the County cannot carry its burden of showing that Latanya did in fact know of the right to a jury trial before the opportunity to exercise that right expired." To begin with, while technically true, this is a misleading characterization of the record. Until shortly before the January hearing, the court and Latanya's counsel were operating under the presumption that her jury trial right had been preserved. Thus, in addition to discussing the schedule for the jury trial at the first hearing, at the December hearing the court addressed Latanya personally and stated, "in Phase One you have a trial, jury trial. Your attorney's going to explain all of the procedures involved in a jury trial."

¶ 19. Latanya's second attorney also testified that at the time when she took the case she believed that the jury trial right had been preserved by the first attorney and that she so advised Latanya. The second attorney further testified that she and Latanya engaged in specific and detailed discussions concerning Latanya's

right to demand a jury trial, as she advised Latanya about the potentially negative impact of such a trial. The attorney advised Latanya to forego a trial, because the facts of the criminal complaint suggested that the State would succeed at proving the grounds, and the trial would cause the court to focus on the extremely negative factual details of Latanya's crimes. Focusing the court on those negative facts could hamper the effort to sway the court to impose guardianship instead of termination in the dispositional phase of the proceedings.

¶ 20. Not until all of this had already occurred, as Latanya was seated in court and about to waive her trial rights and stipulate to the grounds, did the court announce its belief that the jury trial right was already waived because of the failure of Latanya's first lawyer to file a demand. But at that point, Latanya had already been properly informed and had chosen to follow her attorney's advice and waive a trial in Phase One, for intelligent, strategic reasons. *See Bangert,* 131 Wis. 2d at 285 (concluding that Bangert was aware of the constitutional rights he was waiving even though the colloquy was defective, based on his counsel's testimony at post-conviction proceedings that he was informed of and understood those rights); *Steven H.,* 233 Wis. 2d 344, ¶ 42 (examining entire record under *Bangert* in a TPR case). Thus, Latanya's argument that the court failed to "inform" her of her jury trial right as required by Wis. Stat. § 48.422(1), or that she received ineffective assistance when her first attorney failed to demand a jury trial, is factually unpersuasive.

¶ 21. These arguments are also legally unpersuasive, because no provision of the federal or state constitutions nor Wis. Stat. § 48.422 mandates that a parent's

waiver of the right to a jury trial on the grounds must be on the record during a personal colloquy with the judge. While our supreme court has imposed this pinnacle of procedural protection in criminal cases, *Anderson*, 249 Wis. 2d 586, ¶ 29, no such obligation has been imposed in TPR cases. *See also Brenda B.*, 331 Wis. 2d 310, ¶¶ 45, 53 (rejecting arguments that a TPR plea colloquy was deficient because the court did not explain that the right to parent is "constitutional" and because the court failed to inform the parent of every possible disposition under WIS. STAT. § 48.427). We recognize that a personal colloquy concerning waiver of the jury trial right is a good idea in TPR proceedings and will often be a better way of recording a parent's waiver of the jury trial right. But we decline to impose it as an obligation. The record here shows that Latanya was well informed about her right to a jury trial on the grounds for termination of her parental rights and made an intelligent and voluntary decision to waive it.

### There Was Clear and Convincing Evidence Establishing the Child Abuse Grounds

■

¶ 22. Latanya next challenges her admission to the existence of evidence establishing the "child abuse" ground for termination under WIS. STAT. § 48.415(5). This ground is established if a parent caused injury to a child, was convicted of a felony as a result of that injury, and exhibited a pattern of abusive behavior that substantially threatens the health of the children who are the subject of the TPR petition.[10] *Id.* Latanya's first

---

[10] More precisely, the relevant jury instruction (which Latanya's attorney testified that she reviewed with Latanya line by line) states the elements of this ground as follows: "First,

challenge to this ground is that she did not know that admitting to her felony conviction for second-degree child sexual assault and child sexual enticement was an admission that she caused "injury" to the boy she assaulted. Latanya proposes, then, that an adult woman's initiation of sexual intercourse and other sexual contact with a thirteen-year-old boy is not necessarily an "injury" to the boy.[11] We reject this argument. First, our supreme court has held that "sexual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that." *N.N. v. Moraine Mut. Ins. Co.*, 153 Wis. 2d 84, 95, 450 N.W.2d 445 (1990) (quoting *Whitt v. DeLeu*, 707 F. Supp. 1011, 1016 (W.D. Wis. 1989)). It does not matter whether the minor is a boy and the adult is a woman, nor should it. Our society considers it an injury and our courts have so held. Second, by admitting to her convictions,

---

that [the parent] has caused [the injury] of a child, and as a result of that [injury], [the parent] was convicted of a felony," and "Second, that [the parent] has exhibited a pattern of [sexually] abusive behavior which is a substantial threat to the health of [the children who are the subject of the petition]." Wɪs JI-Cʜɪʟᴅʀᴇɴ 340. "Abuse" in sexual abuse cases means "that a child has been subjected to" sexual intercourse, sexual contact, exploitation, exposure of genitals, or forced viewing of sexual activities. *Id.*

[11] In support of this argument, Latanya misleadingly relies upon a case standing for the very different proposition that injury *by conduct regardless of life* is not a lesser-included offense of first-degree sexual assault. *Hagenkord v. State*, 94 Wis. 2d 250, 287 N.W.2d 834 (Ct. App. 1979), *aff'd in part and rev'd in part*, 100 Wis. 2d 452, 302 N.W.2d 421 (1981) (emphasis added). Contrary to Latanya's representations, *Hagenkord* did not hold, or even suggest, that proof of involuntary sexual intercourse is not proof of injury.

Latanya admitted that she caused injury to a child and was convicted of a felony as a result.

¶ 23. There was also a factual basis for the second element, a pattern of sexually abusive behavior that was a substantial threat to the health of her children, because (as Latanya's attorney discussed with her) Latanya assaulted the boy repeatedly, over a period of time; the assaults took place in the home when the children were there; and pornography was allegedly viewed in their presence.

¶ 24. In summary, the colloquy at the January hearing, as well as Latanya's attorney's testimony in August, amply establish that Latanya knew and understood that the child sex crimes to which she had pled guilty proved these specific elements of the "child abuse" ground.

*There Was Clear and Convincing Evidence*
*Concerning the CHIPS Ground*

¶ 25. Latanya's attack on the factual basis for the CHIPS ground under WIS. STAT. § 48.415(2)(a) also fails. That ground has four elements, of which the only ones at issue were whether the Racine County Human Services Department made a reasonable effort to provide court-ordered services to Latanya, whether Latanya failed to meet the conditions established for the children's safe return, and whether she was substantially likely to meet those conditions within the nine months following the hearing. WIS JI-CHILDREN 324A.

¶ 26. While Latanya is correct that the initial petition was devoid of the factual details to prove these elements, the record leaves no doubt that at the time of

her stipulation such facts existed and were known to her. Additionally, reviewing the entire record and totality of circumstances in assessing whether a factual basis existed, *see Steven H.*, 233 Wis. 2d 344, ¶¶ 59–60, we note that the parole officer's testimony at the February hearing established that Latanya was unlikely to be able to provide a safe home for the children in the near future, not because of her incarceration, but because Latanya was angry and uncooperative with the officer's efforts to help her plan her transition from prison in view of the applicable sex offender restrictions.

### *There Was No Possibility that a Jury Trial Would Have Changed the Result*

¶ 27. Latanya lastly argues that a new trial is necessary to preserve the interests of justice. We disagree. None of Latanya's arguments dispels the inescapable fact that any error in the procedures leading to Latanya's admission to the grounds did not harm her case. To the contrary, her stipulation was strategically wise. "Some statutory grounds for unfitness . . . are expressly provable by official documentary evidence, such as . . . judgments of conviction," *Steven V.*, 271 Wis. 2d 1, ¶ 37, and there was no question that Latanya did plead guilty to her sex crimes. We agree with Latanya's trial counsels' assessments that in view of her convictions, and the underlying facts of those crimes, it was practically inconceivable that a jury trial, or a court trial, would have resulted in a finding that grounds for termination did not exist. Hence, the legal advice she received was effective. Latanya sensibly chose to avoid a trial that, as the circuit court observed, "would [have been] like waving a red flag in front of a bull."

## Conclusion

¶ 28. In short, we find nothing in the federal or state constitutions or in WIS. STAT. § 48.422 mandating that a parent's waiver of the right to a jury trial during the first phase of TPR proceedings is defective unless made during a personal colloquy with the judge. In these circumstances, Latanya, with effective legal counsel, pursued the best available strategy for avoiding termination of her parental rights, by admitting the grounds but challenging the disposition by proposing guardianship. That strategy failed, but that is not grounds for reversal.

*By the Court.*—Orders affirmed.