**COURT OF APPEALS
DECISION
DATED AND FILED**

**February 28, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal Nos. **2023AP1723**
**2023AP1724**

Cir. Ct. Nos. **2022TP67**
**2022TP68**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

---

NO. **2023AP1723**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A.X.S.A., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

I.A.A.,

    RESPONDENT-APPELLANT.

---

NO. **2023AP1724**

IN RE THE TERMINATION OF PARENTAL RIGHTS TO R.R.M.H., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-RESPONDENT,

  V.

I.A.A.,

    RESPONDENT-APPELLANT.

---

APPEALS from orders of the circuit court for Kenosha County: JODI L. MEIER, Judge. *Affirmed.*

¶1    LAZAR, J.[1] Ivy[2] asserts that the circuit court's acknowledged failure to hear testimony in support of the allegations in the petition for the termination of her parental rights at her plea hearing on grounds constitutes reversible error pursuant to WIS. STAT. § 48.422(3), which provides that the court "shall" hear such testimony. The State asserts that the circuit court may rely upon judicial notice of the underlying Children in Need of Protection or Services (CHIPs) orders in lieu of hearing testimony. This court disagrees with the State's interpretation of the statutory mandate, but concludes that court was able to "tease[] out" all of the necessary elements for a termination of parental rights from "other witnesses at other hearings" before it accepted Ivy's no contest plea as

---

[1] These appeals are decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] In order to protect her confidentiality, pursuant to WIS. STAT. RULE 809.19(1)(g), this court refers to the mother of the two children by a pseudonym. The two minor children, are also referred to by pseudonyms: Adrian and Renee.

articulated in *Waukesha County v. Steven H.*, 2000 WI 28, ¶58, 233 Wis. 2d 344, 607 N.W.2d 607. Thus, there was no prejudice to Ivy and this court affirms.

## BACKGROUND

¶2 Ivy is the mother[3] of two children, Adrian and Renee.[4] Both children were detained by Kenosha County in August 2020, and CHIPs petitions were filed on August 28, 2020. The children were found to be in need of protection or services in September 2020 pursuant to WIS. STAT. § 48.13(10). The circuit court entered dispositional orders on October 26, 2020, placing the children outside Ivy's home and setting six conditions of return that Ivy had to meet in order to have the children returned.

¶3 On December 21, 2022—more than two years after the initial dispositional order (and the removal of the children)—the State filed petitions pursuant to WIS. STAT. § 48.415(2) for the termination of Ivy's parental rights regarding each child. Ivy entered a plea of no contest to a finding of unfitness with respect to both children on April 24, 2023, at which time the circuit court conducted a thorough plea colloquy. There was no evidence taken at the plea colloquy, nor did any witnesses testify. The circuit court held open the finding of Ivy's unfitness, though, pursuant to an agreement by the parties to allow Ivy an

---

[3] The children in these appeals have different fathers. Both fathers' rights to the children were terminated and neither father has filed an appeal.

[4] Adrian was three years and three months when placed in foster care, and was five years and eleven months when Ivy's parental rights were terminated. Renee was one year old when placed in foster care, and was three years and seven months when Ivy's parental rights were terminated.

opportunity to meet the conditions for return of her children and obviate the termination of her parental rights. If Ivy successfully complied with the hold open agreement, both of the termination petitions would be dismissed.

¶4 Ivy tested positive for cocaine in May 2023 and the County moved to revoke the hold open agreement. At the hearing on that motion, Ivy's counsel acknowledged that Ivy tested positive for cocaine, but offered as an explanation that a person in Ivy's home placed the cocaine on Ivy's table and that the positive test resulted not from intentional use but from Ivy cleaning the table after she ordered the individual out of the home. Ivy herself agreed that she tested positive for cocaine, but repeated the explanation given by her counsel, adding that the friend's cocaine on the table unintentionally got on pizza that she ingested. Ivy's counsel further acknowledged that the positive test result is a violation of the hold open agreement. The guardian ad litem noted that Ivy had already been given the benefit of extra time to meet her conditions of return and stated that finality was in the children's best interests. The circuit court found that there was a violation of the agreement and that Ivy's explanation was not credible because she "had the control over the circumstances." It then revoked the hold open agreement and ultimately entered a finding of unfitness.

¶5 The circuit court conducted a dispositional "best interests" phase hearing on June 20, 2023, after which the court terminated Ivy's parental rights to Adrian and Renee. A social worker and Ivy testified at this hearing and the County submitted several certified documents.

¶6 The social worker confirmed that the children were placed outside of Ivy's home in August 2020. She prepared a court report for each child that

summarized her work on both cases. When asked by the circuit court, the social worker agreed that she "incorporate[d] into [her] testimony the contents of [her] dispositional reports" filed in the two cases.

¶7 Counsel for Ivy stopped the questioning of the social worker to inquire whether the hearing would cover the "factual basis for grounds" (unfitness) stage as well as the dispositional best interests phase. The circuit court indicated that the parties had stipulated[5] to the grounds, but that both grounds and best interests could be addressed at the hearing. After the social worker testified, the State asked the circuit court to take judicial notice of the certified copies[6] of the CHIPs dispositional orders and permanency plan orders for both children. The court did so.

¶8 Ivy admitted that the children had not been returned to her care once they were removed, and that they had resided in foster care for two years and nine months. She admitted that she had not met all of the conditions for their return.

¶9 With respect to Ivy's visitation with her children—one of the conditions of return—the guardian ad litem argued that:

> [Ivy] has participated in 1.5 hours a week, one day, and
> there's no indication from any record that the Department
> has not provided programming that would have allowed her
> to advance and spend more time and I've heard nothing

---

[5] The State, in error, stated that because Ivy had stipulated to the grounds and since the unfitness finding (that was initially held open) was ultimately entered by the court, it needn't put on more evidence with respect to unfitness grounds.

[6] The certified copies for each child included an October 26, 2020 dispositional order and permanency hearing orders dated February 16, 2021; August 16, 2021; February 16, 2022; and July 21, 2022.

today to indicate that [Ivy] really grasped what a parent does or is.

¶10    Taking all of the testimony into account, the circuit court issued an oral ruling:

> Based on a review of the documents in the official court file including the historical data contained in the judgment role, a review of the petition for termination of parental rights and attachment in each file, the testimony of our witnesses here today as well as the documents I've taken judicial notice of I accept the evidence.
>
> I find it worthy of belief….
>
> ….
>
> The children were removed and [Ivy] was unable to reunify after two years and [ten] months.
>
> Even the visits never moved to unsupervised or monitored visits so when I consider the likelihood of future placements if the children were with the parents or a parent it would likely be a future placement since after two years and nine months there was the inability to reunify.

¶11    Following the termination of her parental rights, Ivy filed a postdispositional motion for relief in which she sought to withdraw her no contest pleas and vacate the judgments based upon the circuit court's failure to hear testimony at her plea hearing.  In November 2023, the circuit court held a hearing on the motion and then issued an oral ruling in December in which it found that the filed, certified copies of CHIPs orders all contained "a necessary termination of parental rights warning."  The court acknowledged that it "did error [sic] in not taking testimony prior to the finding of unfitness" of Ivy.  But, when the court looked to whether Ivy had been prejudiced by that error in light of the standard set forth in *Steven H.*, it addressed each element necessary for a finding of unfitness and concluded that each had been satisfied, stating:

6

>And again for all the reasons that I've just enumerated the Court finds that although the Court did error [sic] in not taking testimony at the time that the plea was entered … a factual basis can be teased out or deduced from the testimony of [the social worker] at the dispositional hearing.

>Which of course included incorporating the contents of her disposition court report into [the social worker's] testimony and by looking at the court record and as a result I do find that [Ivy] has not been prejudiced and therefore her motion is denied.

¶12 A written order denying the motion was entered on December 20, 2023. These appeals followed.

## DISCUSSION

¶13 Application of the harmless error rule, as enunciated in ***Steven H.***, presents "a question of law that this court reviews de novo." *See **State v. Jackson***, 2014 WI 4, ¶44, 352 Wis. 2d 249, 841 N.W.2d 791.

¶14 "The due process protections of the 14th Amendment apply in termination of parental rights cases. When the State seeks to terminate familial bonds, it must provide a fair procedure to the parents, even when the parents have been derelict in their parental duties." ***State v. C.L.K.***, 2019 WI 14, ¶15 n.8, 385 Wis. 2d 418, 922 N.W.2d 807 (quoting ***Brown County v. Shannon R.***, 2005 WI 160, ¶56, 286 Wis. 2d 278, 706 N.W.2d 269). "Although they are civil proceedings, termination of parental rights proceedings deserve heightened protections because they implicate a parent's fundamental liberty interest." ***Shannon R.***, 286 Wis. 2d 278, ¶59 (footnotes omitted). "Recognizing the fundamental importance of parental rights, the Wisconsin legislature has mandated numerous procedural protections in TPR proceedings." ***Racine Cnty. Hum. Servs.***

7

*Dep't v. Latanya D.K.*, 2013 WI App 28, ¶13, 346 Wis. 2d 75, 828 N.W.2d 251. "Although 'the paramount goal' of Chapter 48 of the Wisconsin Statutes 'is to protect children and unborn children,' the Children's Code also aims 'to preserve the unity of the family, whenever appropriate, by strengthening family life through assisting parents ... whenever appropriate, in fulfilling their responsibilities as parents ....'" *Eau Claire Cnty. Dep't of Hum. Servs. v. S.E.*, 2021 WI 56, ¶2, 397 Wis. 2d 462, 960 N.W.2d 391 (quoting WIS. STAT. § 48.01(1)(a)).

¶15 A termination of parental rights case "involve[s] a two-step process." *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶18, 333 Wis. 2d 273, 797 N.W.2d 854. The first step is the fact-finding hearing. That step, per WIS. STAT. § 48.424(1)(a), is to "determine ... [w]hether grounds exist for the termination of parental rights" in a contested case, and it can be done by court or jury trial. "The focus of this step is whether the § 48.415 ground has been met, not the child's best interest." *Tammy W-G.*, 333 Wis. 2d 273, ¶18. "The second-step [in a termination of parental rights case], the dispositional hearing, occurs only after the fact-finder finds a … § 48.415 ground has been proved and the court has made a finding of unfitness." *Tammy W-G.*, 333 Wis. 2d 273, ¶19.

¶16 The legislature enacted WIS. STAT. § 48.422(3) to govern hearings on the underlying grounds for a petition held in the first phase of a termination of parental rights case. *See Steven H.*, 233 Wis. 2d 344, ¶38.

> The procedure set forth in WIS. STAT. § 48.422 addresses the legislative concern that the "power of the state to terminate the parental relationship ... can only be exercised under proved facts and procedures which assure that the power is justly exercised ... [and] that the parental rights will not be terminated precipitously, arbitrarily or capriciously."

*Steven H.*, 233 Wis. 2d 344, ¶40 (alterations in original) (quoting ***Burnett Cnty. Dep't of Soc. Servs. v. Kimberly M.W.***, 181 Wis. 2d 887, 892, 512 N.W.2d 227 (Ct. App. 1994)). The statute provides that "[i]f the petition is not contested the court *shall* hear testimony in support of the allegations in the petition." Sec. § 48.422(3) (emphasis added). Our supreme court has "conclude[d] that the legislature intended the circuit court to hear testimony in support of the allegations because testimony safeguards accurate fact-finding and protects the parents." *Steven H.*, 233 Wis. 2d 344, ¶56.

¶17 The key to these appeals is not determining whether the circuit court violated WIS. STAT. § 48.422(3) by failing to hear testimony in support of the allegations in the petitions for termination of Ivy's parental rights—it did. Rather, the question is whether Ivy was prejudiced by the court's error. *See Steven H.*, 233 Wis. 2d 344, ¶2. This court is instructed to review "the entire record and the totality of the circumstances" to determine if there was prejudice to Ivy. *Id.*, ¶4.

¶18 At the grounds/fitness hearing in *Steven H.*, the circuit court was asked to take judicial notice of a termination of parental rights report that "set forth information supporting the factual allegations," but was filed four months after it was authored. *Steven H.*, 233 Wis. 2d 344, ¶53. Our supreme court held that "[t]he Report standing alone is not testimony." *Id.* Relying upon WIS. STAT. § 902.01(2), it further held that it "doubt[ed] whether a circuit court can take judicial notice of the facts contained in the Report because the facts are subject to reasonable dispute." *Steven H.*, 233 Wis. 2d 344, ¶53. Notwithstanding the violation of WIS. STAT. § 48.422(3), the court determined that that error alone does not justify reversal of a termination of parental rights unless the parent has been prejudiced. *Steven H.*, 233 Wis. 2d 344, ¶57. Appellate courts are to discern

whether "[a] factual basis for … the allegations in the petition can be teased out of the testimony of other witnesses … when the entire record is examined." *Id.*, ¶58.

¶19    In these appeals, a finding that Ivy was unfit had to be made. Although Ivy entered a no contest plea to the unfitness allegations in both petitions to terminate her parental rights to Adrian and Renee, "[d]eciding not to contest the allegations of the petition is not equivalent to admitting the allegations in a petition." *See **Steven H.**,* 233 Wis. 2d 344, ¶52.    Pursuant to WIS. STAT. § 48.415(2)(a)1.-3., a child is in continuing need of protection or services if three elements are established:

> 1.  … [T]he child has been adjudged to be a child … in need of protection or services and placed … outside his or her home pursuant to one or more court orders … containing the notice required by s. 48.356(2) ….
>
> 2.  … That the agency responsible for the care of the child and the family … has made a reasonable effort[7] to provide the services ordered by the court.
>
> 3.  That the child has been placed outside the home for a cumulative total period of 6 months or longer pursuant to an order listed under subd. 1 … [and] that the parent has failed to meet the conditions established for the safe return of the child to the home.

¶20    Each of these elements was established outright in Ivy's case or established by witness testimony at other hearings and exhibits accepted by the

---

[7] The statute defines "reasonable effort" as "an earnest and conscientious effort to take good faith steps to provide the services ordered by the court which takes into consideration the characteristics of the parent or child …, the level of cooperation of the parent … and other relevant circumstances of the case." WIS. STAT. § 48.415(2)(a)2.a.

circuit court.[8]  First, Adrian and Renee were adjudged to be in need of protection or services by a court in September 2020 pursuant to WIS. STAT. § 48.13(10).  The Court Reports prepared by the social worker, the contents of which were both expressly incorporated into her testimony, established this fact.  In addition, the court took judicial notice of the five CHIPs orders entered in each case, which showed that the children had been adjudicated as being in need.  Each order for each child contains findings by a circuit court that Adrian and Renee were in need of continuing protection or services.

¶21     In addition, the testimony of the guardian ad litem establishes the fact that the children were removed by the County and never reunited with Ivy.  Finally, Ivy's arguments in her testimony that she had substantially complied with the conditions of return establish that there *were* conditions of return that she was ordered to comply with *and* that she had not fully complied with those conditions.

¶22     As in *Steven H.*, the major argument Ivy presents with respect to the factual allegations in both petitions is that there is no proof that the orders extending placement outside the home contained the requisite statutory notices.  *See* 233 Wis. 2d 344, ¶59.  Ivy is not challenging that Adrian and Renee were removed from her in August 2020 or that they had not been returned to her care

---

[8] As noted in the remainder of this opinion, this court delved into the records, documents, transcripts, and orders in an attempt to tease out the necessary evidence.  That is not typically something that appellate courts are wont to do.  "Judges are not like pigs, hunting for truffles buried in briefs."  *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam).  However, given the extraordinarily important issues in these expedited termination of parental rights appeals, and the fact that all children deserve finality, permanence, and certainty with respect to their forever homes, in this instance, the court did hunt through the Record.  That is not to be expected in other appeals.

from that date through the date the termination petitions were filed in December 2022. In fact, she testified that those allegations were true. She further conceded that she had not "completely" met her conditions of return and admits that she tested positive for cocaine during the three-month hold-open time period.[9]

¶23 In *Steven H.*, our supreme court stated that past court reports from an underlying CHIPs case are not testimony and could not, standing alone, be support for a finding on unfitness grounds. *Id.*, ¶53. But in these appeals, the State relied upon the social worker's current Court Reports as well as certified copies of CHIPs orders, all of which the social worker testified that she was incorporating into her testimony. These documents were not "standing alone." *See id.* All of them were filed in the termination of parental rights proceedings, and the social worker was subject to cross-examination on all of these documents.

¶24 Thus, there is significantly more support here for the allegations in the petition than in *Steven H.*, where the court just took judicial notice of old reports. All of the documents in Ivy's case were further bolstered by the social worker's testimony. It is not necessary for them to have been read verbatim into the record; the social worker authored the Court Reports and she (or someone from her office) was present when the orders were considered and ultimately entered by a CHIPs court. The circuit court properly took judicial notice of the certified orders. Accordingly, this court can look to and consider the evidence in the Court Reports and certified orders and can "tease out" more than enough

---

[9] Ivy contends that she did not intend to use cocaine. Be that as it may, she still tested positive—and she admits that she did not meet all of the conditions required for the return of her children.

testimony and evidence to support the court's finding that Adrian and Renee were in continuing need of protection or services.

¶25 It is also evident that *each and every permanency order* contained the statutorily required notice that Ivy was at substantial risk of losing her parental rights to these children. Those notices were provided in writing at the end of each order *and* the circuit court also orally provided the notices; the orders expressly state:

> The parent(s) who appeared in Court have been orally advised of the applicable grounds for termination of parental rights (TPR) and the conditions that are necessary for a safe return to the home or a restoration of visitation rights. Notice Concerning Grounds to Terminate Parental Rights is provided below. Conditions for return/visitation are part of this Order or attached.

Given all of this testimony and evidence, this court concludes that the first element, and in particular whether the requisite statutory notices were orally made and provided in writing to Ivy, was met. This element actually need not be teased out; it is clear and obvious for each child.

¶26 The second element, related to the agency's reasonable efforts to provide services, is also established by the social worker's Court Reports and the five certified orders in each CHIPs case of which the circuit court took judicial notice. The social worker outlined in her reports why the children were removed from Ivy's home and how she had not improved as of the June 7, 2023 Reports:

> [Ivy] has continuously maintained a lifestyle of instability and poor decision making since the detention of her child[ren]. There are significant concerns regarding [her] ability to provide for her child[ren]'s emotional, medical and physical needs, as well provide her child[ren] with appropriate parenting and the ability to keep her child[ren] safe."

13

¶27    The Court Reports detailed both the updated Conditions of Return and the steps the County had taken to remedy or address those conditions, noting that it offered services to Ivy and that it "remained ready, willing, and able to provide additional services to [Ivy]." Despite those efforts, the Reports state that Ivy "ha[s] failed to make any significant progress on [her] Court Ordered Conditions of Return."[10] The Reports also clearly state why the children cannot be safely returned to Ivy as well as what efforts the County had offered to assist Ivy:

> [Ivy] ha[s] failed to meet the conditions for the safe return of [her] child[ren] to her home. [Ivy] ha[s] continued to demonstrate a chaotic and unstable lifestyle that will not provide safety or security for [her] child[ren]. [Ivy] ha[s] not developed the insight necessary to safely care for [her] child[ren].
>
> ….
>
> Kenosha County Division of Children and Family Services has remained ready and willing to assist [Ivy] in securing the services to meet the conditions of return. The Division has referred to, provided, and coordinated a significant number of services to assist [Ivy] in meeting [her] conditions of return. These services include:
>
> • Kenosha County Division of Children and Family Services-case management services
> • AODA Services/Assessment
> • Kenosha County Health Department- urinalysis testing
> • Foster Care

---

[10] The Reports note successes and failures by Ivy for each condition. For example, she maintained a suitable residence, partially cooperated with the Division of Children and Family Services, and had "engaged in regular visitation with her children," but she "failed to demonstrate the skills learned in the parenting class," had some "chaotic" visits with the children, and out of 147 drug screens, failed to show up for 73—with nine being positive for THC Metabolite and one being positive for cocaine. Moreover, Ivy did not follow through with AODA recommendations, did not complete recommendations following her psychological examination, and did not comply with the requirement to actively participate in and cooperate with educational planning or to provide for the children's financial needs.

- Therapy Services
- Psychological Evaluation
- Transportation Assistance
- Parenting Education
- Supervised Visitation
- Project Home
- Domestic Violence Education
- Parent Mentor

Despite these numerous services offered, the child[ren] cannot be safely maintained in the family home.

….

All services which might allow the child[ren] to return to their parental home have been available to [Ivy] during the course of the CHIPS Court Orders.

¶28 In addition, in the court orders from each CHIPs case, the circuit court found that the County had made reasonable efforts to provide the court-ordered services to Ivy to prevent removal including, for example, case management, parenting education, urine analysis, visitation, individual therapy, and referrals for psychological evaluation and housing assistance. The orders further detailed that Ivy continually failed to meet her conditions.[11] These findings

---

[11] First, each of the four permanency hearing orders contains a finding that Ivy had not complied with the conditions for return as well as some specific details. In the February 2021 order, the circuit court found that while Ivy had not met the conditions for return, she "is making progress on the conditions of return. Additional time and effort is needed to ensure she can provide a safe, stable and sober home for the child[ren]." In the August 2021 order, Ivy still had not met the return conditions, and the court found that Ivy had not met with the County since the last court date (February, 16, 2021) or appeared at two scheduled meetings and that "[d]ue to [Ivy's] non-compliance there are no current updates." In the February 2022 order, the court noted that Ivy was "not consistent in providing UAs or dealing with her mental health issues." And, in the final order (July 2022), Ivy had still not met the conditions for return, and the circuit court noted that "[t]he children have been out of home for almost two years. Mother has not made substantial progress on meeting the conditions of return." That order was on a form that provided the court the ability to note that Ivy was in partial compliance; it did not do so.

15

in the Record, together with the other evidence clearly set forth the second element for a finding of Ivy's unfitness.

¶29    The final element of an unfitness finding—that the children had been placed outside the home for longer than six months and that Ivy had failed to meet the conditions for their return—was proven by Ivy's own statements.  Ivy admitted that the children had not been returned to her care once they were removed, and that they had resided in foster care for two years and nine months.[12]  Ivy also admitted that she did not meet all the conditions for return; she agreed that she tested positive for cocaine during the hold-open time period, albeit providing excuses for the positive test result.

¶30    Despite the aforementioned evidence of the factual bases for the allegations of unfitness in the termination of parental rights petition, for her final argument, Ivy contends that unlike the parent in **Steven H.** she is presenting a substantive defense:  that she "believed that she had largely met the return conditions" and "[t]o the extent that [she] did not fully do so, she testified that it was '[b]y fault not on [her] own terms.'"  She is challenging the allegations in the petition, "specifically whether or not she had met the return conditions, and also, whether or not the State had made a reasonable effort to provide her with services."  All of these arguments have been addressed and refuted above; they will not be repeated here.  They have no merit.

---

[12] The social worker also confirmed that the children were placed outside of Ivy's home in August 2020, and in her Court Reports, she noted that the children had been placed outside the home by court orders for more than six months.

¶31 While this court has "grave concerns" about the circuit court's failure to hear testimony at the grounds establishing unfitness hearing, *see **Steven H.***, 233 Wis. 2d 344, ¶60, there are sufficient facts that can be "teased out" from the social worker's testimony, her reports to the court, and the underlying certified CHIPs orders, as well as Ivy's own statements, to provide a factual basis for the allegations that Adrian and Renee were children in need of protection or services, that they had been placed outside of Ivy's care for over two years, during which time Ivy failed to meet the reasonable conditions of return, and that the County had made reasonable efforts to assist Ivy in meeting those conditions.

## CONCLUSION

¶32 It is important for children who have been placed outside of their family home to find permanence and not have their young lives subject to unnecessary stress, despair, and uncertainty. That is why termination of parental rights appeals are among the few appeals that are required to be expedited. *See* WIS. STAT. RULE 809.107(6)(e).

¶33 It is undisputed that the circuit court erred in not hearing testimony at the grounds of unfitness hearing. It is, however, also undisputed that Ivy admitted to several of the requisite findings. The remaining allegations to establish that Ivy was an unfit parent to Adrian and Renee can be teased out of the testimony, exhibits, and the totality of the circumstances, thus it was not error to conclude that Ivy was not prejudiced by the circuit court's error. It is also undisputed that Ivy was provided—over and over—the requisite statutory notices that she was at substantial risk that she could lose her parental rights to these two children because they remained children in need of protection or services.

¶34    Accordingly, the circuit court appropriately denied the motion to vacate the termination of parental rights orders and this court affirms the circuit court's orders to terminate Ivy's parental rights in these consolidated appeals.

*By the Court.*—Orders affirmed.

This opinion will not be published.    *See* WIS. STAT. RULE 809.23(1)(b)4.